117 So.2d 290 (1960)
Donald LYELL
v.
UNITED STATES FIDELITY & GUARANTY CO. et al.
No. 21274.
Court of Appeal of Louisiana, Orleans.
January 18, 1960.
Rehearing Denied February 1, 1960.
Certiorari Denied March 23, 1960.
*291 Gordon B. Hyde, New Orleans, for plaintiff and appellant.
Sessions, Fishman, Rosenson & Snellings, Breard Snellings, New Orleans, for defendant and appellee.
REGAN, Judge.
Plaintiff, Donald Lyell, a "guest passenger", instituted this suit against the defendants, Boyd P. Guepet, the owner and operator of the Ford automobile in which the passenger was injured, and his insurer, the United States Fidelity and Guaranty Company, endeavoring to recover the sum of $19,460, representing damages for personal injuries incurred by him on May 4, 1955 at 12:30 a.m. as the ultimate result of Guepet's losing control of his vehicle and colliding with a concrete column which supports a railroad overpass spanning the inbound roadway of Canal Boulevard.
Defendant, the United States Fidelity and Guaranty Company, pleaded the exceptions of no right or cause of action, predicated on the assertion that it was not the automobile liability insurer of the Ford automobile, owned and operated by Guepet, and that the only policy of insurance in force when the accident occurred covered a 1954 Buick also owned by Guepet.
The trial court referred these exceptions to the merits and the defendant then answered, reiterating as a special defense that the vehicle involved in the accident was not covered by its policy of insurance, and in the alternative, pleaded the contributory negligence of the plaintiff in that he had attended a party with Guepet where both consumed alcoholic beverages and, therefore, plaintiff knew or should have known that Guepet's ability to safely operate a motor vehicle was greatly impaired thereby.
Defendant, Boyd Guepet, answered and denied that he was guilty of any negligence in the premises, and asserted that the proximate cause of the accident was the negligence of an unknown motorist who caused him to swerve in order to avoid a collision therewith, and as a result thereof, he collided with a concrete column supporting the overpass. In the alternative Guepet specially pleaded that plaintiff was contributorily negligent in that they had attended a party together where both consumed alcoholic beverages and plaintiff knew or should have known that Guepet's ability to drive safely had been impaired as a result thereof.
*292 The lower court found that the defendant Guepet's negligence was the proximate cause of the accident and accordingly rendered a judgment in favor of the plaintiff and against this defendant in the amount of $17,162.88, and dismissed his suit against the co-defendant, United States Fidelity and Guaranty Company, for the reason that under its policy of insurance, coverage was not afforded Guepet as the owner and operator of the vehicle involved in the accident.
From the foregoing judgment, plaintiff has prosecuted this appeal insofar as it dismissed his suit against the defendant, United States Fidelity and Guaranty Company. No appeal was perfected by the defendant Guepet and the judgment rendered against him on July 10, 1958 is now final.
The facts are relatively simple. The record reveals that on the evening of May 3, 1955, Dutch O'Neal, a Ford automobile distributor in the City of New Orleans, gave a stag party at Bart's Restaurant near the lakefront for his sales personnel. There exists some conflict as to the duration of the party; however, it appears that it started about 7:30 or 8 p.m. and terminated shortly after midnight, and it is conceded that beer was served and it "flowed freely".
Plaintiff testified that he left the business establishment of O'Neal about 10 p.m. with two friends[1] who were not associated with the company. Shortly after reaching Bart's, his companions left but he remained until sometime after midnight. While there, he estimated, he drank four or five beers, but he stated that he arrived too late to eat. During the course of the party at Bart's, he, together with a group of co-workers, were invited to participate in a short cruise on O'Neal's yacht, where beer also was served. After their return the party continued for another half hour or more; thereafter the guests prepared to depart and defendant, Guepet, offered him[2] a ride back to Dutch O'Neal's sales office. Then, plaintiff recounted, Guepet drove in West End Boulevard toward the city, turned left at Homedale Avenue and proceeded at a speed of 35 miles per hour toward Canal Boulevard; upon reaching the intersection of Canal Boulevard, the motorist ignored a stop sign, but did decelerate to 30 miles per hour before attempting to turn therein. Plaintiff said he remembers vaguely seeing the lights of a car proceeding in Canal Boulevard toward City Park Avenue a split second before the accident, which was the same direction in which Guepet endeavored to steer his automobile. He remembers little, if anything, of what transpired after the collision.
When plaintiff was interrogated relative to Guepet's sobriety, he was initially evasive; however, he finally in substance asserted that "* * * There had been a good bit of drinking going on by just about everyone and Mr. Guepet had been drinking but * * *". "* * * he wasn't absolutely drunk."
He then, in response to the following questions, more pertinently related:
"Q. In other words, did his outward appearance indicate that he had been drinking at all? A. Yes sir, I guess so."
"Q. But you still could look at him and tell he had been drinking? A. Yes sir.
"Q. And in spite of that you accepted a ride home with him? Is that correct? A. I accepted a ride home."
Defendant Guepet's version of the accident and the events prior thereto differed *293 in several respects. For instance, he testified that he and Lyell left the O'Neal sales office about 10 p.m. and went to the stag party together[3] in his automobile. He related that they had four or five beers and remained until the party was over. He traced their homeward route as did plaintiff; however, he painted a more vivid picture of the manner in which the accident occurred. Guepet conceded that he turned from Homedale Avenue into Canal Boulevard without stopping, and once in the roadway noticed a vehicle "bearing down" on him in Canal Boulevard coming from the lake. In order to avoid a collision, he accelerated and then attempted to turn into the left or neutral ground lane of Canal Boulevard in the direction of the river; however, the front wheels of his automobile hit the curbing, causing him to lose control. In consequence thereof, the vehicle careened back across the two lane roadway, struck the right curbing, then turned and recrossed the inbound lanes of Canal Boulevard, finally crashing into a concrete column, which supported the railroad overpass.
In conclusion, Guepet asserted that plaintiff never cautioned him relative to the manner in which he was operating his vehicle and he finally very frankly admitted that he was intoxicated when he left Bart's Restaurant, "not to a moderate extent" but to a "slightly above moderate degree", and that he had enough to drink so as to impair his ability to operate a motor vehicle safely.
Johnny McBride, a salesman also employed by Dutch O'Neal, testified for the defendant, Guepet, and related that plaintiff and Guepet left the office to attend the stag party between 7:30 and 8 p.m., rather than 10 p.m. as plaintiff and Guepet insisted, and further remembered seeing both drinking beer; however, he did not recall the quantity either consumed.
Counsel for plaintiff contends that Lyell was free of fault and that the accident was proximately caused by Guepet's negligence; however, both in brief and oral argument he has principally argued, apparently because Guepet's case is not before us, that the Ford automobile in which plaintiff was a guest passenger when injured was covered by the contract of insurance issued by the defendant insurer to Guepet.
Counsel for the defendant insurer, on the other hand, insists that the plaintiff was contributorily negligent in accepting a ride with Guepet when he knew that Guepet was under the influence of alcohol and that in consequence thereof, his driving ability was impaired, and finally that Guepet, as the operator and owner of the vehicle involved in the accident, was not covered by a contract of insurance with the defendant.
We pretermit a determination of the validity of the exceptions of no right or cause of action predicated on defendant insurer's contention that coverage of Guepet was not afforded under their contract of insurance, for the reason that the record reflects that the exceptions were sustained only after the case had been fully tried in the lower court and whenever it is judicially feasible, we prefer to decide a case of this nature on its merits.[4]
The whole tenor of the record leads us to the inevitable conclusion that Guepet was intoxicated when he, Chester Wells, and plaintiff drove away from Bart's Restaurant. Guepet admits he was intoxicated which he with some difficulty defined as "not to a moderate extent" but to a "slightly above moderate degree" and that his ability to operate a motor vehicle was impaired thereby.
*294 Since the Stone Age men have experienced difficulty in evaluating various stages of their intoxication. More than a century ago in writing of "The Misfortunes of Elphin", Thomas Love Peacock endeavored then to poetically rationalize intoxication as follows:
"Not drunk is he, who, from the floor, Can rise alone and still drink more; But drunk is he who prostrate lies, Without the power to drink or rise."
Of course, times have changed, particularly with the advent of the motor car, since that was written, and for weal or woe, we must change with them. In any event, it is, we believe, now conceded by those best informed on the subject that the state of being "drunk" cannot be the subject of a prescribed rule or measured by the numerical formula of how many drinks were consumed. The condition then is as indefinable, nebulous and fleeting as the proverbial twilight, so that whether a man who has taken a few drinks or "beers" is to be judicially considered intoxicated or sober depends upon the time, place and other circumstanceswhich require for discussion a scholarship more rich than possessed by the author hereofbut more specifically, upon his occupation at the moment, such as being engaged in the operation of a motor vehicle.
Fortunately our analysis of Guepet's state of intoxication has been, to a large extent, rendered unnecessary by virtue of Guepet's admission that he had enough to drink so as to impair his ability to operate a motor vehicle safely, and the very nature of the accident, we believe, confirms the admission of negligence.
The question thus posed for our consideration is whether plaintiff, as a reasonable man, was contributorily negligent in not refusing to ride with Guepet when he knew or should have known that Guepet's ability to safely operate a motor vehicle had been impaired by the consumption of too many "beers".
Here again the whole tenor of the record leads us to the inevitable conclusion that plaintiff knew or should have known that Guepet was unable to operate a motor vehicle. While no intensive, searching examination was made into plaintiff's state of sobriety, he conceded that he did not "eat" while at Bart's, but had four or five beers instead. Plaintiff and Guepet were together at Bart's Restaurant for several or more hours and he admitted that "there had been a good bit of drinking going on by just about everyone" including Guepet; but that "he (Guepet) wasn't absolutely drunk". However, his "outward appearance did indicate that Guepet had been drinking" and despite this fact, he accepted a ride with him.
We are, therefore, of the opinion that the record clearly establishes as a fact that plaintiff possessed such knowledge of Guepet's condition so as to convict him of contributory negligence and thus bars his recovery herein.[5]
For the foregoing reasons, the judgment appealed from is affirmed.
Affirmed.
JANVIER, Judge (concurring).
I agree with the conclusion reached that there is no liability in the defendant, United States Fidelity and Guaranty Company. I think, however, that the suit should be dismissed on the ground that the liability policy which had been issued to Guepet did not, under the circumstances, include protection against liability for the operation of the Ford automobile which was involved in the accident.
When this policy on the Buick was renewed, it again covered the Buick and made no mention of any other car except such as might be acquired in the future.
*295 At that time Guepet was already the owner of the Ford automobile. Thus the policy cannot be construed as affording protection against liability resulting from the operation of that car.
Under these circumstances, it is unimportant to investigate the facts of the accident. The insurer could not be held liable regardless of how the accident may have occurred.
I, therefore, concur.
NOTES
[1] These friends were never called as witnesses on behalf of plaintiff although the record indicates that they were available and could have clarified a dispute as to his time of arrival and medium of transporation to Bart's Restaurant.
[2] Chester Wells was the third person in the vehicle and his absence as a witness for either plaintiff or Guepet is unexplained.
[3] It will be recalled that plaintiff said he was driven to Bart's Restaurant by two friends.
[4] Trasatti v. Jeffer, La.App.1956, 86 So.2d 230; Ford v. Baird Brothers, La.App. 1935, 161 So. 45; See also State v. North Louisiana & Texas Railroad Co., 1882, 34 La.Ann. 947, 951 and Code of Practice, Art. 905.
[5] Elba v. Thomas, La.App.1952, 59 So.2d 732; Thibodeaux v. Houston Fire & Casualty Insurance Co., La.App.1955, 77 So. 2d 137.