FRUGÉ, Judge.
This case and its companion 'cases arose out of an automobile accident which occurred in Avoyelles Parish near Cotton-port, Louisiana, on the night of November 30, 1962. Plaintiffs, George A. Bennett and his wife, Maria Bennett, as guest passengers in the automobile, brought suit against the driver, G. W. “Billie Joe” Moore, Jr., and his liability insurer, Traders & General Insurance Company. The driver’s father, G. W. Moore, Sr., was also joined as a defendant for the reason that G. W. Moore, Jr., was a 20-year-old un- *393 emancipated minor at the time of the accident.
The trial judge, on a finding of contributory negligence and assumption of risk, dismissed plaintiffs’ suit as well as the suit of the plaintiffs in the companion cases arising out of the same accident, all of the suits having been consolidated for trial on the merits. Plaintiffs in the instant case and plaintiffs in the companion cases of Schmidt et ux. v. Traders & General Insurance Company, 170 So.2d 396; James v. Traders & General Insurance Company, 170 So.2d 396, and Mullins v. Traders & General Insurance Company, 170 So.2d 396, have all taken appeals from the district court’s judgment. Separate judgments in each case will be rendered by this court.
The accident occurred on the night of November 30, 1962, at approximately 11:30. “Billie Joe” Moore was driving his 1958 Chevrolet and had as guest passengers Mr. and Mrs. Bennett, Eileen Schmidt, Crawford James and Sylvia Valine Mullins. Of the six passengers in the automobile all but two were seated in the front seat, the two seated in the back being Mr. and Mrs. Bennett. The vehicle, being driven, at a speed of about 60 miles per hour, collided with a telephone pole when the driver, Moore, failed to negotiate a curve. As a result of the accident Eileen Schmidt was instantaneously killed and all of the other passengers injured.
There is no serious contention by defendants that the driver, Moore, was not negligent; rather, the principal issue is the contributory negligence vel non of the guest passengers. The trial judge found as a fact that the driver of the vehicle was intoxicated or substantially under the influence of alcohol and that all of the guest passengers had themselves been drinking alcoholic beverages and knew or should have known of Moore’s intoxication. From this finding the trial judge concluded all of the guests were contributorily negligent and assumed the risk which led to their injury. As an additional basis for his decision the trial judge held that plaintiffs were negligent in agreeing to ride with four persons in the front seat in a manner that must have crowded the driver and impaired his ability to operate the vehicle.
Most of the facts leading up to the time of the accident are not in dispute. It is clear that it was the common plan of all of these young people to go to a night club known as Lee’s in or near Cottonport, Louisiana, for an evening of entertainment.
Moore and Crawford James left Moore’s house in Alexandria, Louisiana, at approximately 8:00 P.M. and went to a nearby drive-in known as Skippy’s, where Crawford James bought a case of cold beer which was placed on the floor of the car between the front and rear seats. While at Skippy’s. Moore and James had at least one beer each. After a lapse of about 15 minués the two left Skippy’s and picked up Eileen Schmidt at her residence a few blocks away and then proceeded to pick up Sylvia Mullins and then the Bennetts at their residence. This party of six was assembled by about 9:00. The group then proceeded on Highway 1 towards Cottonport. A short stop was made at another establishment known as Shep’s in Mansura, Louisiana,, where more beer was purchased.
The party arrived at Lee’s in or near Cottonport, at approximately 10:15, where they stayed for about one hour during which time they danced and drank beer or mixed drinks. The accident occurred approximately 15 minutes after the group left Lee’s.
All of the survivors of the accident testified that neither Moore nor any of the other passengers appeared intoxicated. They testified that no one in the group was staggering or slurring their speech. It is clear that all persons in the party had consumed some amount of beer or other alcoholic drink but the quantity so consumed is disputed. All agree that the driver, Moore, consumed only beer.
*394 The trial judge found as a fact that Moore had consumed from 8 to 10 beers during the course of the evening. It appears that these beers were consumed during an interval of approximately three to three and a half hours. We are of the opinion that the record supports such a finding.
Moore testified that he drank four beers prior to arriving at Lee’s and four or five more while there. He stated that everyone in the party had several drinks. He stated that to his knowledge he was not intoxicated and that he felt he was able to operate the automobile.
The day after the accident, while at the hospital where they were being treated, Mr. and Mrs. Bennett signed a joint statement taken by an investigating police officer in which Mr. Bennett stated that Moore had from 7 to 8 beers after he picked them up at their residence at about 9:00. At the trial, Mr. Bennett was not sure of the accuracy of that statement but thought Moore had less than that amount to drink. Mrs. Bennett likewise testified that she was not sure of the number of beers consumed by Moore.
Miss Sylvia Mullins testified that Moore had approximately six beers from the time he picked her up at her residence until the time of the accident. She stated that she had from 3 to 5 beers during this period.
Crawford James testified that no one in the party showed any sign of intoxication. In a signed statement to an investigating police officer the day after the accident he indicated that Moore had 6 or 7 beers during the course of the evening. At the trial he stated that he, James, had 3 beers and 2 mixed drinks and had not felt the slightest effects thereof.
State Trooper Lemoine, an investigating officer at the scene of the accident, testified that Crawford James appeared to be highly intoxicated; so much so that it was necessary to handcuff him in order to maintain order. Trooper Lemoine stated that he smelled alcohol on all of the passengers but did not have the opportunity to observe Moore’s conduct since Moore was and remained unconscious for a considerable period of time after the accident. Trooper Edward Bordelon, who assisted Trooper Lemoine, testified substantially to the same effect. This testimony sheds some light on the probable condition of Moore as well as that of James since all pertinent testimony indicates that Moore had consumed at least as much alcoholic beverage as had James. Crawford James was at that time a 225 pound college fullback. Moore, a much smaller man, weighed about 175 pounds.
Defendants introduced the testimony of Dr. E. C. Uhrich, a physician specializing in pathology. Dr. Uhrich testified that in his opinion a blood-alcohol level of 0.10% was intoxicating. He further testified that consumption of four beers within a period of four hours by the average adult male who did not partake of food during that interval would result in a blood-alcohol level of 0.10% and that with the additional consumption of two more beers during this same interval there would be an increase to 0.15% He stated that the consumption of food immediately prior to or during this interval would somewhat reduce this estimated level. He also testified that a large person could consume more alcohol without becoming intoxicated than could a smaller person. His testimony was entirely of a general nature and did not relate to any particular individual.
Under our established jurisprudence a guest passenger cannot recover from his host for personal injttries received as a result of his host driver’s negligence when it appears that the guest passenger knew or should have known that the host driver had a sufficient amount of intoxicants to cause him to lose normal control of his physical and mental faculties and cause such faculties to be materially impaired. Under such conditions the guest passenger is held to have assumed the risk and is *395 therefore barred from recovery. Stalsby v. Powell, La.App. 3rd Cir., 146 So.2d 279; Grayson v. Allstate Insurance Company, La.App. 1st Cir., 141 So.2d 101; Dowden v. Bankers Fire & Marine Insurance Company, La.App. 2d Cir., 124 So.2d 254; Lyell v. United States Fidelity & Guaranty Company, La.App., Orleans, 117 So.2d 290.
Our Supreme Court has recently spoken concerning the rights of guest passengers to recover for injuries received while riding with an intoxicated driver. In the case of Jones v. Continental Casualty Company, La., 169 So.2d 50 (Docket No. 47086), the facts show that five persons, including the driver of the automobile, were killed when the automobile in which they were riding collided with defendant-insurer’s truck. The court found as a fact that the automobile driver was intoxicated, there having been medical testimony that he had a blood-alcohol level of 0.11%. On reversing a decision by this court which had allowed the guest passengers to recover against the truck driver’s employer and its insurer, the Supreme Court stated, “Having found as a fact that Keith Samuel Jones was intoxicated at the time of the accident, it is unreasonable to say that his guests did not realize that he was intoxicated. If they did not realize his condition they should have, such is the test of the law.”
In his written reasons for judgment the trial judge stated:
“It was a drinking party from the start, they carried their liquor with them, and they all participated. They all knew the extent of Moore’s drinking; they knew or should have known his mental state. To ride with him driving, under these circumstances was independent contributory negligence on the part of the others and they assumed the risks.”
After thoroughly reviewing the record we are unable to say that the trial judge manifestly erred in concluding that Mr. and Mrs. Bennett, as well as all of the other guest passengers, knew or should have known that Moore had consumed enough alcoholic beverages to materially impair his normal mental and physical faculties. Nor can we say that the trial judge erred in concluding that the consumption of the alcoholic beverages by the driver was the cause of the accident. The only explanation given for Moore’s failure to control his vehicle was that he misjudged the degree of the curve. This was on a highway with which he was thoroughly familiar. The trial judge apparently concluded, and we agree, that this misjudgment directly resulted from the influence of the consumed alcoholic beverage.
Each of the guest passengers had an opportunity to observe that Moore had consumed enough alcohol to adversely influence his ability to operate a motor vehicle. Apparently, no protest or objection was made by any of the passengers on the matter of continuing to ride with Moore as their driver. Under these conditions all passengers assumed the risks and are barred from recovering for their injuries. It is therefore unnecessary for this court to consider whether it was also negligence for the passengers to consent to ride in the automobile with four passengers in the front seat.
For the assigned reasons the judgment of the district court dismissing the suits of George A. Bennett and Maria Rita Borde-lon Bennett at their cost is affirmed. Plaintiffs shall bear the costs of this appeal.
Affirmed.