131 So.2d 225 (1961)
Myron P. EMBODY et al.
v.
Mrs. Lillian M. LE BLANC et al.
No. 5343.
Court of Appeal of Louisiana, First Circuit.
May 22, 1961.
Rehearing Denied June 30, 1961.
*226 St. Clair Adams, Jr., of Adams & Reese, New Orleans, A. Deutsche O'Neal, Houma, for appellants.
Breard Snellings of Sessions, Fishman, Rosenson & Snellings, Carl J. Schumacker, Jr., of Lemle & Kelleher, New Orleans, for appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
LOTTINGER, Judge.
This is one of three suits in tort which were consolidated for purposes of trial. Although our decision in all three suits will be embodied in this one opinion, separate judgments will be rendered in each individual suit.
The other two suits are entitled Throckmorton v. LeBlanc et al., La.App., 131 So. 2d 231, which will hereafter be referred to as the Throckmorton suit, and LeBlanc v. Indemnity Insurance Company of North America et al., La.App., 131 So.2d 232, which will hereafter be referred to as the LeBlanc suit. The present action will hereafter be referred to as the Embody suit.
In the Throckmorton suit, Wayne W. Throckmorton and the Travelers Insurance Company sue Lillian M. LeBlanc and her liability insurer, the Millers Mutual Fire Insurance Co. of Texas. Travelers Insurance Company appears therein as the compensation insurer of Universal Services of Texas, Inc., by whom Throckmorton was employed at the time of the accident, and Travelers seeks to be reimbursed for compensation paid to Throckmorton, and which is to be paid out of any judgment which might be rendered in favor of Throckmorton in the said suit
In the Embody suit, Myron P. Embody and Travelers Insurance Company sue Lillian M. LeBlanc, as well as her liability insurer, Millers Mutual Fire Insurance Company of Texas, together with Indemnity Insurance Company of North America, the liability insurer of Auto Leasing Company of Seattle, Washington, and Bankers Fire and Marine Insurance Company, the Liability insurer of Throckmorton on his personal automobile.
In the LeBlanc suit, Lillian Meyers LeBlanc, as petitioner, sues Indemnity Insurance Company of North America, Auto Leasing Company of Seattle, Washington, Universal Services of Texas, Inc., the employer of both Embody and Throckmorton, Bankers Fire and Marine Insurance Company, and Wayne W. Throckmorton.
In the Throckmorton suit, the Lower Court rendered judgment in favor of the defendants, Mrs. LeBlanc and Millers Mutual Fire Insurance Company, and against petitioners, Wayne W. Throckmorton and the Travelers Insurance Company, denying and dismissing the demands of petitioners at their costs. A devolutive appeal therein was taken by both petitioners.
In the Embody suit, the Lower Court awarded judgment in favor of petitioner, Myron P. Embody, against defendant, Bankers Fire and Marine Insurance Company in the sum of $10,000, and in favor of defendants, Lillian LeBlanc, Millers Mutual *227 Fire Insurance Company and Indemnity Insurance Company of North America, dismissing the demands of petitioners insofar as the latter defendants are concerned. There was also judgment in favor of Travelers Insurance Company and against Bankers Fire and Marine Insurance Company, in the sum of $2,282.25, which sum is to be paid out of the judgment rendered in favor of Embody, but not in addition thereto. In this matter an appeal was taken by Bankers Fire and Marine Insurance Company, as well as by petitioners, Myron P. Embody and Travelers Insurance Company.
In the LeBlanc suit, the Lower Court rendered judgment in favor of Mrs. Lillian Meyers LeBlanc, and against defendants Throckmorton, Bankers Fire and Marine Insurance, Auto Leasing Company of Washington and Universal Services of Texas, Inc., jointly and severally, in the sum of $23,875.75, with the provision that liability of Bankers Fire and Marine Insurance Company shall be limited to the sum of $12,354.90. By amended judgment, the Lower Court added Indemnity Insurance Company of North America as a party cast. Appeals from said judgment were taken by all parties cast in the said judgment.
At the time of the accident, both Wayne W. Throckmorton and Myron P. Embody were within the course and scope of their employment with Universal Services of Texas, Inc. They were driving a Chevrolet station wagon which was rented to their employer by Auto Leasing Company of Seattle, Washington. As is indicated above, the Travelers Insurance Company was the workmen's compensation insurer of Universal Services of Texas, Inc. and benefit payments were made by said insurance company to both Throckmorton and Embody for injuries sustained in the accident. Indemnity Insurance Company of North America was the liability insurance carrier of Auto Leasing Company of Washington on the automobile leased to Universal Services of Texas, Inc. The said insurance policy provided for bodily injury liability coverage of $500,000 for each person and $500,000 for each accident, as well as property damage liability of $100,000. Bankers Fire and Marine Insurance Company was the liability insurance carrier of Wayne W. Throckmorton on his personal automobile. The limits of bodily injury liability were $10,000 for each person, $20,000 for each accident, and the property damage liability was $5,000 for each accident. Millers Mutual Fire Insurance Company of Texas was the liability insurance carrier of Mrs. Lillian M. LeBlanc under bodily injury liability of $10,000 to each person, and $20,000 for each accident.
The accident in question occurred at about 4:00 o'clock p. m. on November 18, 1957 on what was formerly known as U. S. 90, now designated as Louisiana Highway 20, at a distance of approximately six miles west of Schriever, in the Parish of Terrebonne, State of Louisiana. Highway 20 is a busy highway running generally east and west from Schriever to Morgan City. Highway 20 is a two lane highway 24 feet in width and is paved with concrete over which is a surface of asphalt. A broken white line distinguishes the center of the highway. The impact occurred on a bridge over the Terrebonne-Lafourche Drainage Canal, which is approximately 120 feet in length. On either side of the bridge the highway is straight for a great distance, although there is a small elevation as the highway runs into the bridge. The highway, in the vicinity, traverses a swampy area, and the shoulder on either side thereof is approximately ten feet in width. The roadway at the time of the accident was as "slick as glass" as a result of a heavy rain which had previously fallen, and a misty rain which was still falling at the time of the accident, however, the visibility was unlimited, both vehicles were in good condition and both had their parking lights burning. The speed limit was 60 miles per hour.
Prior to the time of the impact Mrs. LeBlanc was proceeding in an easterly direction *228 in her proper lane of traffic at a speed of 50 to 55 miles per hour. For some distance, she was followed by witness Herbert Breaux, who was also proceeding easterly at a distance of approximately 400 feet to the rear of the LeBlanc vehicle. A station wagon owned by Auto Leasing Company of Seattle, Washington, and rented to Universal Services of Texas, Inc. was being driven in a westerly direction by Mr. Throckmorton. Mr. Embody was a passenger in the automobile driven by Throckmorton, and both of these parties were within the course and scope of their employment with Universal Services of Texas, Inc. at the time of the accident. Throckmorton and Embody testified that, prior to the accident, they were proceeding at a speed of between 45 and 50 miles per hour. Preceding them were two large Halliburton trucks, consisting of tractor and trailer having a combined length of 47 feet each. The evidence conclusively shows that these trucks were proceeding at a speed of approximately 30 to 35 miles per hour, they each had a governor which would not allow a speed in excess of 30 miles per hour. These trucks were traveling west with an interval of some 100 to 200 feet between them.
Upon overtaking the two Halliburton trucks, Throckmorton pulled to his left lane in an attempt to pass them. In the act of passing these trucks, he increased his speed to some 55 to 60 miles per hour. As Throckmorton's vehicle was in the act of passing the forward Halliburton truck, at which time this truck was approximately 75 yards from the eastern edge of the bridge crossing the Terrebonne-Lafourche Drainage Canal, Mrs. LeBlanc's vehicle was at a distance of some 50 to 60 feet on the opposite side of the bridge, according to the testimony of Joseph M. Comeaux, who was driving the leading Halliburton truck. Upon seeing the station wagon along side his truck, and the on-coming LeBlanc vehicle, Mr. Comeaux realized a very dangerous condition, and immediately applied the brakes on his truck because "they didn't have much space between the three of us". The evidence establishes that at approximately this same time, Mrs. LeBlanc applied her brakes, skidded along the western half of the bridge until she struck the guard railing located at the center of the bridge, and then bounced across the north lane of traffic, when she was struck by the Throckmorton station wagon. The evidence is inconclusive as to exactly when the station wagon driven by Throckmorton regained its right hand, or the northern, lane of traffic, however, the evidence certainly indicates that if he did regain his right lane, it was just shortly prior to the moment of impact. The evidence indicates that the LeBlanc car showed skid marks from the time it entered the bridge until it struck the railing at the center, on the south side of the bridge, and then continued to skid diagonally across the bridge until the moment of impact. No skid marks were made by the station wagon prior to the time of impact.
The Lower Court, in a very well reasoned opinion, held Mr. Throckmorton negligent in not maintaining a lookout, in not maintaining his car under proper control, and for being on the wrong side of the highway which was not free of on-coming traffic for a sufficient distance to allow him to overtake the Halliburton truck. The Court held him in violation of LSA-R.S. 32:232 and LSA-R.S. 32:233(C), relative to meeting, overtaking and passing vehicles.
Various of the defendants seek to show either that Throckmorton was guilty of no negligence whatsoever, or in the alternative, that Mrs. LeBlanc was guilty of contributory negligence. Under the circumstances of this accident and considering the close proximity of the Throckmorton and LeBlanc vehicles when Throckmorton attempted to pass the Halliburton truck, as well as the wet and slippery condition of the highway, we feel that there is certainly no question but that Mr. Throckmorton was guilty of gross negligence. As to any *229 negligence on the part of Mrs. LeBlanc, we feel that the Lower Court was perfectly correct in holding that she was faced with a sudden emergency not of her own making, and took the usual and normal steps to avoid the accident, i. e., applying her brakes. She is, therefore, not responsible for the fact that her car skidded into the guard railing and was then deflected into the north or wrong lane of traffic, where the impact apparently occurred. The fact that she was faced with a sudden and dangerous emergency is clearly fortified by the reaction of Comeaux himself, who, upon first noticing the Throckmorton vehicle attempting to pass him immediately applied his brakes in an attempt to bring his truck to a stop, as he feared a fatal accident. Although Comeaux testified that under good conditions he could normally bring his truck to a complete stop within a distance of approximately 100 feet while traveling at a speed of 35 miles per hour, due to the wet and slippery conditions of the highway, he traveled a distance of approximately 200 feet before his vehicle stopped.
Witness Herbert Breaux testified that there was no erratic behavior by the LeBlanc car prior to it entering the bridge. After it entered the bridge, he testified that the LeBlanc car skidded into the guard railing, and then bounced off, at which time the accident occurred. He testified, however, that he immediately applied his brakes, upon seeing the LeBlanc vehicle skid, and brought his car to a stop prior to reaching the bridge.
Considering the circumstances of this accident, there is no question in our minds that the sole and proximate cause thereof was the gross negligence of Throckmorton in attempting to pass the Halliburton truck when the highway in front of him was not clear for a sufficient distance to allow him to pass in safety. Mrs. LeBlanc was faced with a sudden and dangerous emergency, not of her own creation, and is free of any negligence or contributory negligence. Although we feel that she took the normal and proper course of action in an attempt to either avoid or lessen the force of the impact, even if she were guilty of some error in judgment, the sudden emergency facing her would absolve her from any liability in this respect.
As to the Throckmorton case, we, therefore, feel that the Lower Court was correct in dismissing said suit, and its judgment, in this respect, will be affirmed.
As regards the Embody suit, as stated above, the Lower Court awarded judgment in favor of petitioner and against defendant, Bankers Fire and Marine Insurance Company in the sum of $10,000. There was also judgment in favor of Travelers Insurance Company, and against Bankers Fire and Marine Insurance Company, for compensation payments made from Travelers to Embody, the sum of which judgment is to be paid out of the amount of the award to Embody. The Embody suit as against all other defendants was correctly dismissed by the Lower Court.
We feel, however, that the Lower Court overlooked Insuring Agreement V contained in the policy of Bankers Fire and Marine Insurance Company issued to Throckmorton on his personal vehicle. Said paragraph provides as follows:
"V Use of Other Automobiles. If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, C-1 and E, with respect to said automobile applies with respect to any other automobile, subject to the following provisions:
"(d) This insuring agreement does not apply:
"(1) to any automobile owned by or furnished for regular use to either the *230 named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;"
The evidence discloses that the station wagon which Throckmorton was driving at the time of the accident was leased by Auto Leasing Company of Seattle, Washington to Universal Services of Texas, Inc. This station wagon was leased for the normal and regular use of Throckmorton and Embody. Throckmorton testified that he and Embody had gotten the car when it was new in March, and that they had the regular use thereof, in their services to their employer, from the period in March until the accident occurred during the month of November. Under such evidence, we feel that the provision of the policy above quoted would apply so as to relieve the Bankers Fire and Marine Insurance Company from any liability under its policy issued insuring the personal vehicle of Throckmorton. We therefore feel that the Lower Court erred in not dismissing the Embody and LeBlanc suits as they bear against Bankers Fire and Marine Insurance Company, and the judgment below will be reversed in this respect. This, of course, means that the entire Embody suit will be dismissed as explained later.
As to the LeBlanc suit, the Lower Court rendered judgment in favor of petitioner and against defendants Throckmorton, Bankers Fire and Marine Insurance Company, Auto Leasing Company of Seattle, Washington, Universal Services of Texas, Inc., and Indemnity Insurance Company of North America. As stated above, we believe that Bankers Fire and Marine Insurance Company should be dismissed as a party cast in said judgment.
Indemnity Insurance Company of North America was absolved from liability in the Embody suits because of a co-employee clause in its policy which provides as follows:
"III. Definition of insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and, * * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured * * * or with the permission (of the named insured). The insurance with respect to any person or organization other than the named insured * * * does not apply: * * (2) to any employee with respect to injury or to sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer." (Italics ours.)
As grounds for such dismissal, the Lower Court cited Arceneaux v. London Guarantee and Accident Company, La.App., 87 So.2d 343, and Jackson v. American Automobile Insurance Company, La.App., 103 So.2d 304, which held a co-employee excluded under identical policy provisions. The opponents have cited Pullen v. Employers' Liability Assurance Corporation, 230 La. 867, 89 So.2d 373, which decision was written by the learned trial judge as justice ad hoc. However, in that case, there was not a co-employee relationship as we find in the present case. In the Pullen case, the relationship was that of independent contractor, and, therefore, similar provisions in the insurance policy did not apply.
However, as regards the LeBlanc case, the co-employee relationship would not apply, and the insurer of the vehicle would be liable for damages.
As regards the LeBlanc suit, the petitioner therein seeks an increase in quantum, and the defendants seek a decrease *231 in quantum. The record disclosed that Mrs. LeBlanc was employed as Chief Operator of the Houma office of Southern Bell Telephone and Telegraph Company at the time of the accident. As a result of the said accident, she suffered lacerations of both hands, multiple abrasions of the hands, legs and head, and a fracture of the right humerus. The injuries were described as quite painful, and she was suffering from shock. She remained in the hospital for approximately one month, was given morphine for sedation and suffered a great deal of pain. Dr. James Gilley, an orthopedic surgeon described her residual as follows: "Disability in the cervical spine had reduced to about 7 or 8% of the neck. Disability of the shoulder was reduced to about 10% of the function of that joint, and the disability in the wrist remained at about 10%. I have felt that these disabilities would be permanent." The Lower Court itemized the damages awarded to petitioner as follows:
Pain and suffering and permanent residual injury to her shoulder$4,000.00
Ten per cent permanent disability of her right hand$3,000.00
Permanent disability of the neck $6,500.00
Pain, suffering, disfigurement and disability of right arm$4,500.00
Multiple abrasions, contusions, lacerations and shock$2,500.00
Special proven damages$3,375.75
All of the above mentioned items of damage were based upon the awards granted in suits wherein the specific injuries were of a similar nature. It is indeed a difficult task to award damages for personal injuries without some key as a basis for the award, and we are impressed by the reasoning used by the Lower Court in reaching its decision on quantum. We feel that the said award was neither excessive nor inadequate, and the decision of the Lower Court will be affirmed in this regard.
For the reasons hereinabove assigned, the judgment of the Lower Court is hereby reversed insofar as it awards judgment in favor of petitioners and against Bankers Fire and Marine Insurance Company, and there is hereby judgment herein dismissing petitioners' demand as against all defendants, all costs of this appeal to be paid by petitioners.
Judgment reversed.