132 So.2d 892

Mrs. Barbara Akers MARTIN

v.

FIREMEN'S INSURANCE CO. OF NEWARK, NEW JERSEY.

No. 45574.

June 29, 1961.

Rehearing Denied Oct. 4, 1961.

Mayer & Smith, Shreveport, for applicant.

Henri Loridans, Bossier City, for plaintiff-appellee.

FOURNET, Chief Justice.

Mrs. Barbara Akers Martin instituted a direct action against the Firemen's Insurance Company of Newark, New Jersey, as the liability insurer of the Plymouth automobile being driven by her husband, Obie Martin, in which she was a passenger, to recover damages for personal injuries she sustained as a result of a head-on collision between the Plymouth[1] and an automobile being driven by Claude Moore; and the matter is now before us for consideration on a writ granted on application of the insurance company to review the judgment of the Court of Appeal affirming the judgment of the lower court approving a jury award of $10,000. See 127 So.2d 328.

As stated by the trial judge in his written reasons for denying defendant's motion for a new trial: "The undisputed and uncontroverted evidence in this case shows that: The plaintiff was a passenger in an automobile; her host is the defendant's insured; the accident happened on a relatively straight and level stretch of 2-lane blacktop highway; the highway on which the accident occurred had a very narrow shoulder on the insured's right-hand side of the road, which descended sharply into a deep ditch along the insured's right-hand side of the road; the accident was a head-on collision in the insured's own lane of travel; the other car involved in the accident was driven by an intoxicated negro, (Claude Moore) whose passenger appeared and testified at the trial; the intoxicated negro was attempting to pass another vehicle at the time of the accident. Also uncontroverted and undisputed are the facts that the straight stretch of highway on which the accident occurred in something in excess of 1000 feet in length; that the passenger in the negro's automobile and the insured had an unobstructed view of each other when the automobiles were something more than 1000 feet apart; that both vehicles were traveling at a rate of speed between 40 and 50 miles per hour; that the insured did observe the negro's automobile approaching in his lane at approximately 1000 feet distant, but relied on his belief that the negro would return to his own proper lane of travel; that when it became apparent that the negro would not leave the insured's lane of travel, the insured attempted to bring his automobile to a halt, both vehicles skidding a considerable distance to the point of impact."

The Court of Appeal in its reasons for judgment accepted the foregoing facts as found by the trial judge and, after citing

---

1. The automobile, which plaintiff's husband was driving, and in which plaintiff was injured, was owned by her father, Jack Akers, and was being used by her husband on a personal mission with the permission of her said father.

the rule of law uniformly adopted by the courts of this state applicable in such cases, reported in Blashfield's Cyclopedia of Automobile Law & Practice, Permanent Edition, Vol. 2, Sec. 919 [2] stated that it was fully convinced that "this factual matter could have been resolved either way by the court below", observed that "it is not necessarily the duty of this court after reading the record to substitute its own judgment for that of the judge and jury below, but to accept their findings unless manifest error is found therein" and reached the conclusion that it was "unable to find manifest error in the conclusions that were reached."

■ According to the facts of this case the court properly concluded that Claude Moore was "guilty of the grossest type of negligence in operating his vehicle entirely

on the wrong side of the road, and continuing such negligent operation until the impact occurred" and we think the court in its application of the rule of law universally obtaining in such cases was eminently correct in its observation that "It is likewise clear that Obie Martin had a right to assume that the motorist who was approaching him on the wrong side of the road would yield or turn out in time to avoid the collision." However, we cannot agree with the court's final conclusion that they are unable to find manifest error in the conclusion reached by the trial judge, reasoning that:

"Traveling at a rate of speed about 66 feet per second (45 miles per hour), the insured observed or should have observed the hazardous condition at least 1000 feet away from him. From this point, he was about 500 feet from

2. "A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver, therefore, proceeding on the right side of the traveled highway, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving.

"Likewise, a motorist on the right side of the road and traveling in a lawful manner can assume that one approaching in the opposite direction will control his car in obedience to the law of the road and will not suddenly turn across his path.

"These assumptions may not be indulged in, however, after he sees or ought to see, from the situation of the cars or highway or the conduct of the approaching driver, that they are unwarranted. In other words, the duty of an automobile driver, who is on the right side of the street, to stop or take other precautions to avoid a collision with an approaching vehicle, only arises when by *due care* he discovers that another on the wrong side of the street cannot or will not himself turn to the right to clear his way."

the point of impact. Traveling at **a** constant rate of 45 miles per hour, he would have reached the point of impact in something more than seven seconds. Assuming that he used up nearly two seconds in attempting to bring his car to a halt, the uncontradicted evidence shows that he continued down the road in the face of apparent danger, taking no action to extricate himself, for a period of five seconds. The jury concluded, and the Court agrees, that this constitutes negligence which was a proximate cause of the accident."

This conclusion is founded on the erroneous assumption that plaintiff's husband, immediately upon seeing Moore attempting the passing maneuver, should have sensed the peril of the situation and should have instantly taken steps to stop or to avert the collision contrary to the conclusion previously reached by the court that "Obie Martin had a right to assume that the motorist who was approaching him on the wrong side of the road would yield or turn out in time to avoid the collision" and overlooking Martin's rights under the prevailing rule of law obtaining in this state, quoted with approval in the Court's opinion and cited herein in footnote number 2, "the duty of an automobile driver, who is on the right side of the street (road), to stop or take other precautions to avoid a collision with an approaching vehicle, *only arises* when by due care he discovers that another on the wrong side of the street (road) cannot or will not himself turn to the right to clear his way."

A careful study of the record fails to disclose any evidence that would justify the conclusion that the defendant did or should have discovered the peril in which he was placed by Moore's action in time to avoid the collision. True, it is shown Martin saw the approaching car as he rounded a bend in the road some 1000 feet away. Traveling on the right side of the road in a lawful manner he had the right to assume that Moore, who was approaching from the opposite direction, would control his car in obedience to the laws of the road and it was only when Moore, abreast of the car he was attempting to pass, suddenly applied his brakes that Martin was first apprised that Moore would be unable to complete the passing maneuver undertaken by him 1000 feet away; Martin, thus confronted with the eminent peril of a head-on collision with Moore's car, was unable to turn to the left because of the oncoming car which Moore was attempting to pass, nor could he turn to the right because of the narrow shoulder on the right which descended sharply into a deep ditch; he took the only course left to him, that is, he applied his brakes.

For the reasons assigned the judgments of the District Court and of the Court of Appeal are annulled and set aside and plaintiff's suit is dismissed at her costs.