159 So.2d 500 (1963)
Mary P. BELANGER
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN et al.
No. 5981.
Court of Appeal of Louisiana, First Circuit.
December 16, 1963.
Rehearing Denied January 27, 1964.
*501 Montgomery, Barnett, Brown & Read, by Peter H. Beer, New Orleans, for appellant.
Leonard Greenburg, Houma, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
This matter, together with related causes Evangeline Coca Cola Bottling Company v. Douglas Dartez, et al., La.App., 159 So.2d 510; Pizzolatto v. Employers Mutual Liability *502 Insurance Company of Wisconsin, et al., La.App., 159 So.2d 510; and Ladouceur v. Dartez, et al., La.App., 159 So.2d 511, respectively, all arise from a single automobile accident which occurred shortly before 6:45 A.M., November 3, 1959, on an east-west tangent of paved, two-lane U. S. Highway 90, approximately one mile east of the Town of Jeanerette, St. Mary Parish, Louisiana.
The collision occurred when plaintiff, Joseph J. Pizzolatto, proceeding westerly on Highway 90 driving a 1959 Mercury automobile belonging to Charles R. Belanger and plaintiff, Mary P. Belanger, in which the aforesaid owners were riding, crossed into the opposing lane of traffic and struck a Coca-Cola truck belonging to plaintiff, Evangeline Coca-Cola Bottling Company and being driven by said corporation's employee, plaintiff, Paul Jean Ladouceur, in an easterly direction approaching the oncoming vehicle driven by Pizzolatto. The two drivers, Ladouceur and Pizzolatto, sustained personal injuries as a result of the accident, as did Mrs. Belanger also. Mr. Belanger was thrown from the Mercury automobile and instantly killed. Following the accidents all plaintiffs in these consolidated causes, excepting plaintiff Joseph J. Pizzolatto, received settlements of their claims against the liability insurer of the Belanger vehicle. Within a short time subsequent to said settlements, these now consolidated actions were filed against Douglas Dartez, the driver of a 1955 Chevrolet pickup truck belonging to his employer, Clark Sherwood d/b/a Clark Sherwood, Contractor, and Sherwood's liability insurer, Employers Mutual Liability Insurance Company of Wisconsin, sometimes hereinafter referred to simply as "Employers".
All plaintiffs maintain the accident resulted solely from the negligence of defendant, Douglas Dartez, who, acting within the scope and during the course of his employment by his said employer, was driving a 1955 Chevrolet truck easterly along the highway behind the Coca Cola truck and recklessly attempted to pass Ladouceur when the oncoming Mercury was only 100 feet distant and Pizzolatto, confronted with the sudden emergency thus created, applied his brakes causing his car to skid out of control onto the right shoulder of the highway, veer across the road into the left or eastbound lane of travel and strike the Coca Cola truck. The trial court rendered judgment in favor of all petitioners against defendants in solido. All defendants have appealed and plaintiffs, Joseph J. Pizzolatto, Mrs. Mary P. Belanger and Jean Paul Ladouceur have answered the appeals praying for increases in their respective awards.
Defendants resisted plaintiffs' demands by contending Dartez was free of negligence proximately causing the accident and alleging the accident occurred solely because of the negligence of Pizzolatto whom defendants maintain was (1) driving too fast on a two-lane highway considering the accident occurred before sun-up on an admittedly foggy morning; (2) failing to maintain a proper lookout; (3) failing to keep his vehicle under proper control; and (4) negligently permitting his vehicle to cross over into the opposing lane of traffic and collide with an oncoming vehicle. Alternatively, defendants maintain Pizzolatto was guilty of contributory negligence in the foregoing respects which negligence was imputable to Mr. and Mrs. Belanger as owners of the vehicle present therein at the time of the accident and also imputable to the Belangers under the joint venture rule. In this latter regard it is conceded by counsel for appellees that the joint venture rule is applicable to the Belangers and that the negligence of Pizzolatto, if any, bars recovery of the claim of Mrs. Belanger.
Defendants also filed a third party petition citing as defendants therein plaintiffs, Ladouceur, Pizzolatto, Evangeline Coca Cola Company and the Millers Mutual Fire Insurance Company of Texas, sometimes hereinafter referred to simply as "Millers", liability insurer of the Belanger vehicle, asserting that if third party petitioners are cast in judgment they should in turn have judgment against third party defendants as co-tortfeasors. All third party defendants *503 excepted to the third party petition as stating no right and no cause of action, which said exceptions were sustained by our learned brother below by judgment rendered May 29, 1961. Third party petitioners have appealed the judgment rejecting and dismissing their third party demand and third party defendants have moved to dismiss this appeal on the ground the appeal therefrom is untimely, considering the only appeal taken herein was taken by defendants February 8, 1963, from the judgment on the merits rendered February 8, 1963. Since all parties have in effect appealed and are therefore truly appellants, henceforth in this opinion, the word "appellants" shall be understood to refer to the initial defendants, Dartez, Sherwood and Employers, unless the contrary is clearly indicated.
Appellants maintain the esteemed trial court erred in the following respects: (1) Denying and refusing appellants the right to orally argue the case below prior to rendition of judgment on the merits; (2) improperly sustaining the exceptions of no right and no cause of action filed by third party defendants to appellants' third party petitioners; (3) concluding Dartez was guilty of negligence proximately causing the accident; (4) rejecting appellants' alternative pleas of contributory negligence with respect to Pizzolatto; (5) rejecting appellants' pleas of contributory negligence and joint venture in bar of Mrs. Belanger's claim; (6) denying appellants credit for the amounts received by plaintiffs from Belanger's insurer, Millers, and (7) awarding plaintiffs, Pizzolatto, Mrs. Belanger and Ladouceur excessive damages.
It is undisputed in the record that Dartez's pickup truck was not in collision with either the Belanger Mercury automobile or the Coca Cola truck and further that Dartez brought his truck to a stop in the eastbound lane approximately 50-75 feet west of the point of collision. Appellants' position, simply stated, is that Dartez's attempted passing maneuver bore no causal relationship whatsoever to the collision between the Mercury and Coca Cola truck. Defendants contend, in essence, that the sole proximate cause of the accident was the negligence of Pizzolatto in driving at an excessive rate of speed, admittedly between 45 and 50 miles per hour, in a heavy fog and losing control of his vehicle after rounding a curve situated approximately 1300 feet east of the point of impact.
Our learned brother below concluded the accident occurred in the manner related by plaintiffs' witnesses, namely, that Dartez attempted to pass the Coca Cola truck when Pizzolatto's oncoming vehicle was between 100 and 200 feet distant, notwithstanding the limitation of his vision by a heavy fog which prevailed upon the highway, thereby creating a sudden emergency causing Pizzolatto to forcibly apply his brakes and lose control of his vehicle. The issue presented is purely factual. Able counsel for appellants strenuously argue the learned trial court erroneously resolved the testimony in favor of plaintiffs. More specifically, appellants' astute counsel contends the trial court's decision is contrary to the evidence in that it is predicated upon the testimony of witnesses who, after having received payment of their claims from Belanger's liability insurer, instituted these actions to effect double recovery from defendants based on testimony contradictory to statements given shortly following the accident. It is significant to note at this juncture that our esteemed colleague below noted the discrepancies alluded to by counsel for appellants and concluded he believed the testimony given by plaintiffs' witnesses at the trial of these matters.
Considering first appellants' complaints the trial court committed reversible error in denying, ignoring and refusing counsel's repeated requests to permit oral argument of these matters prior to rendition of judgment below, we deem it important to note counsel's concession of an absence of procedural requirement either statutorily or jurisprudentially. Granting that oral argument may be of significant assistance to a trial court in the disposition of a cause *504 wherein the significant circumstances are seriously disputed and in genuine controversy, or wherein there is presented one or more complex, technical legal issues, or both, nevertheless the granting or refusal of a motion for oral argument rests within the sound discretion of the trial court. While we believe the better practice would dictate that such a request be granted as a general rule, and especially so if there be a real dispute as to the facts or an important legal issue must be resolved, nevertheless the right to oral argument is neither absolute nor unqualified, but lies within the sound discretion of the trial court. The record before us shows no abuse of the trial court's discretion in this regard. We believe our able brother below gave full consideration to every issue raised below by defendants. The record contains his written reasons for judgment which indicate his painstaking review of the evidence and the law applicable thereto. Our consideration thereof impels the conclusion that it is highly unlikely oral argument by counsel for appellants would have altered his decision.
It is elementary that every plaintiff bears the burden of proving his case by a fair preponderance of credible evidence. Sumrall v. Aetna Casualty & Surety Co., La.App., 124 So.2d 168; Bougon v. Traders & General Insurance Co., La.App., 146 So. 2d 535. Appellees, therefore, must not only establish Dartez's negligence but also that his negligence was the proximate cause of the accident as well as the injuries and losses for which plaintiffs seek damages in these actions.
Also apropos the case at bar is the well established principle that where a vehicle is in collision in the wrong traffic lane, its driver is presumed negligent and thereby encumbered with the burden of establishing that the collision did not result from his own negligence or that there were justifiable circumstances which would excuse such conduct. Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671; Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So. 2d 396.
The testimony of the witnesses, including Dartez to some extent, is characterized by failing memories, self-serving declarations, inaccurate and self-contradictory estimates of time and distance and prior inconsistent statements. Generally the resolution of contradictory testimony requires judgment on the credibility of opposing witnesses. In the present case, however, it is of utmost importance to determine when a particular witness was relating the true facts as will hereinafter appear.
Mr. Pizzolatto testified that Mr. and Mrs. Belanger, brother-in-law and sister, respectively, drove to his home in Houma at about 4:45 A.M., on the morning of the accident, to take him to a wedding in Franklin. On arrival at his home, Mrs. Belanger was seated on the rear seat of the Belanger automobile and Mr. Belanger moved from behind the steering wheel to permit Pizzolatto to drive as was their usual custom because of Mr. Belanger's state of ill health. Upon leaving Houma the morning was dark and foggy "in patches". He related that at the scene of the accident there was light fog but one could see, Tr. p. 155, whereas, on cross-examination he reaffirmed a prior statement in which he said he was traveling through a bank of very heavy fog, Tr. p. 159. Traveling westerly, with his headlights on dim or low beam to afford better visibility under the circumstances, he was proceeding at a speed variously estimated as 40-45, 45-50 and 40-60 when he first observed the oncoming eastbound Coke truck about 400-500 feet distant. He could not recall whether at that time he saw Dartez following Ladouceur, Tr. p. 156. When he reached a point approximately 100 feet from the Coke truck, Dartez suddenly pulled into the left westbound lane whereupon he, Pizzolatto, "slapped" on his brakes and his car "skidded to the left into the coke truckthat is it." Tr. p. 147. In a deposition given September 29, 1960, Pizzolatto *505 stated he did not know the distance between his vehicle and the Coke truck when he first observed Ladouceur but that it was a "pretty good ways" and he saw Dartez behind Ladouceur and also noted that neither Ladouceur nor Dartez had their headlights burning. When confronted with his statement given to the investigating officer following the accident to the effect he saw two sets of headlights approaching immediately prior to the collision, Pizzolatto explained he was referring to two other eastbound trucks which passed him shortly before he encountered Ladouceur and Dartez, Tr. p. 156. When questioned further regarding his deposition of September 29, 1960, wherein he stated Dartez's truck had no lights on and the Coke truck may have had its parking lights burning, he reaffirmed the statement Dartez had no lights at all and the Coke truck had only its parking lights burning, Tr. pp. 34-35. In addition, at other places in his testimony, Pizzolatto related that when he applied his brakes his car first went off the road onto the right shoulder and then crossed into the eastbound lane and struck the Coke truck. The conflicting testimony given by Pizzolatto regarding the lights on the Ladouceur and Dartez vehicles is flatly contradicted by Dartez who testified unequivocally he was traveling with his lights on. In this respect Pizzolatto is also contradicted by Ladouceur who stated the lights of the Coke truck were on and who also testified he saw the headlights of Dartez's vehicle in his rear view mirror.
Plaintiff, Mrs. Belanger, confirmed the fact that it was a foggy morning. She stated that at about 6:00 A.M. she and her husband ate a sandwich after which she "put everything back in the lunch box" and was preparing to relax when she suddenly observed a pickup truck coming towards her in Pizzolatto's lane of travel. She threw up her hands, her brother applied the brakes, cut to his right and they struck the Coke truck. She was unable to add further details.
Paul Jean Ladouceur, driver of the Coca Cola truck testified he arrived at work in Jeanerette, at 6:30 A.M., took the fully loaded Coca Cola truck, picked up his helper, Jimmie Archangel, and proceeded towards Franklin. According to Ladouceur there was a "general fog" which was "not too heavy". He was traveling with his headlights on and at a speed of approximately 30 miles per hour. In a statement given March 31, 1960, he related the accident occurred in the following manner:
"I was travelling in the right hand lane of traffic. At this point the highway is a two lane paved road. I had the headlights on my truck on low beam. Suddenly I noticed a pair of headlights coming toward me, this car was coming out of a curve onto a straight stretch of the highway. Because of the fog I could only see the headlights and they were going from side to side. I figured this car was out of control and I could hear the brake squealing as it came toward me. I started to pull my truck off the road and onto the shoulder on the right hand side and I was completely off the pavement and moving very slowly when the oncoming car came across the highway and struck my truck in the left front wheel."
Ladouceur admits having signed the statement at the bottom of each page and in his own hand having written above his signature on the last page the following:
"I have read the above 3 pages three page report, before signing it and it are (sic) true and correct."
At the trial, however, Ladouceur testified that when he was between Albania Mansion and the Moresi curve (that is, the area of the accident) he saw the Belanger car approaching. When he first saw the Belanger vehicle it was 100 to 150 feet distant, Tr. p. 112, or 150-500 feet, Tr. p. 131. After passing the Albania railroad track (a relatively short distance west of the point of impact) he noticed the headlights *506 of a vehicle in his rear view mirror but at no time was he aware of the following vehicle attempting to pass him. In his testimony given during trial, Ladouceur related that the approaching vehicle, traveling at 45-50 miles per hour, when four or five car lengths away, suddenly drove onto the right shoulder, came forward from side to side and then started across the opposing traffic lane. Mr. Ladouceur then pulled his truck over on the right eastbound shoulder and slowed down to five miles an hour, almost to a stop, Tr. p. 123, in a gradual and normal manner at which time the Belanger automobile struck the front of the Coca Cola truck with sufficient force to spin the vehicle completely around following which the Coca Cola truck came to rest on the opposite (right west bound) shoulder facing in the direction from whence it came. Mr. Ladouceur further stated he did not see the approaching car sooner because of the fog (or because of the fog and the curve, Tr. 131). He was unable to testify with reasonable accuracy regarding the time interval between the moment he saw the truck behind him until the accident occurred. He first estimated the interval at one or two minutes, then corrected this by stating he meant seconds rather than minutes and finally that it was about 15 seconds, Tr. p. 133.
In a statement given March 31, 1960, to an adjuster for appellant Employers, Jimmy Archangel, Ladouceur's assistant, gave the following version of the accident:
"We were travelling east on Highway 90 and were in the right hand lane of traffic. Paul Ladouceur was traveling about 30 miles an hour. All of a sudden I noticed a car coming toward us. It had just come out of a curve ahead of us and was starting to straighten out on the straight stretch of highway. It appeared to me that the driver lost control of the car while trying to straighten out, the highway was damp from the fog. The car started swerving from side to side and Paul started slowing down and pulling off on the right hand shoulder, the oncoming car came across the highway and struck our truck on the left front wheel with its left front. The impact spun our truck around and across the highway on the left side."
When called by plaintiffs to testify at the trial Archangel stated he was sitting on the right side of the Coca Cola truck. The time was daybreak and a light fog prevailed. Ladouceur was driving at approximately 25-30 miles per hour. Archangel noticed the Belanger vehicle approaching from a "pretty good distance". He was unable to state just how far away the Belanger vehicle was and could not recall whether its lights were on, Tr. p. 32. The approaching car, according to Archangel at the trial, "ducked" towards his right then "swung back" towards the Coca Cola truck and struck it. Meanwhile Mr. Ladouceur pulled off to the shoulder and applied his brakes. The district judge permitted plaintiffs' attorney to show Archangel a signed copy of a statement previously given to an adjuster in order to refresh Archangel's memory and thereafter Archangel testified the oncoming car swerved to the right when it was about 100 feet distant. Questioned by defendants' attorney regarding the statement of March 31, 1960, Archangel repudiated the statement insofar as it indicated the approaching car went out of control as or after it came around the curve ahead. In essence he testified that everything in the statement of March 31, 1960, which contradicted his testimony at the trial was either not true or was stated through error and mistake. In his testimony at the trial Archangel stated he could not recall whether the oncoming vehicle had its lights on and when confronted with prior statements in which he related the vehicle did have its lights on, he then stated the Belanger vehicle's lights were burning but he could not tell whether they were on high or low beam.
Defendant Dartez testified he was proceeding along the highway driving easterly in the right lane of travel at a speed of approximately *507 45-50 miles per hour. He saw the tail lights of the Coca Cola truck when he was 50 to 60 feet from itthe poor visibility being attributable to the fog. He pulled into the left lane to pass and when about 50 feet to the rear of the Coca Cola truck he noted headlights approaching him in the curve and he pulled back behind Ladouceur. When confronted with a prior statement in which he said he had progressed to a point about even with the rear of the Coca Cola truck before observing the oncoming car, Dartez conceded the latter version was correct. In substance, Dartez stated he pulled into the left lane to see if there was any oncoming traffic before passing and that he could not tell how far distant the oncoming Belanger automobile was because of the fog. He stated, however, that upon first noting the Belanger vehicle it appeared to be pulling to its right and when the impact occurred he, Dartez, was about 75 feet behind the Coca Cola truck and brought his own vehicle to a slow uneventful stop 50-75 feet behind Ladouceur in the right eastbound lane.
Trooper Charles E. Weaver testified that upon arrival at the scene he found the point of impact was on the right eastbound shoulder of the highway and that the Coca Cola truck was completely on the shoulder when struck. In this regard his testimony contradicted that of Ladouceur who variously testified he was completely off the pavement, Tr. 122-123; he was not completely off the pavement, but rather only half off, Tr. 123, and that he was as far over as he could get, Tr. 123-124. According to Weaver, the Belanger vehicle left no skid marks. He corroborated the witnesses who stated a fog prevailed at the time. Trooper Weaver also testified that by looking east from the point of impact one could see the Moresi curve which he estimated at one-quarter of a mile distant. In this connection it is significant to note that a map introduced in evidence reveals the curve to be almost exactly the distance Weaver estimated. His investigation confirmed that the left front of the Belanger vehicle struck the left front of the Coke truck which latter vehicle crossed the road and came to rest in or near the ditch on the opposite side. The Belanger Mercury came to rest facing north within the westbound lane completely blocking that lane of travel.
Predicated upon the foregoing testimony our learned brother below concluded the accident resulted solely from the negligence of Dartez in pulling into the passing lane when the oncoming Mercury was so close as to create an emergency. He further concluded Ladouceur annd Archangel testified truthfully at the trial and that the hereinabove quoted portions of their prior statements did not mean to convey the impression Pizzolatto lost control of his vehicle shortly after rounding the Moresi curve situated approximately a quarter mile east of the point of impact.
Our careful consideration of the record, however, convinces us that in so concluding, our esteemed brother below fell into error. We believe the version of the accident given by Ladouceur, Pizzolatto and Archangel at the trial presents a virtually impossible event. It must be recalled Pizzolatto was admittedly traveling at a speed of 45-50 miles per hour and Ladouceur at 30 miles per hour. The two vehicles, therefore, were closing the gap between them at the rate of 110 feet per second, Pizzolatto 66 feet at 45 miles per hour and Ladouceur 44 feet at 30 miles per hour. Certainly if Pizzolatto were only four or five car lengths distant from the Coke truck when he applied his brakes, as testified at one point by Ladouceur, it was manifestly impossible for the accident to have occurred as appellees contend. In such a short distance it was physically impossible for the Coke truck to reduce its speed from 30 to 5 miles per hour and completely gain the right eastbound shoulder without making an emergency stop. The record is undisputed that Ladouceur slowly braked his vehicle to a near stop. By the same token in such a short distance it was impossible for Pizzolatto to react to the alleged emergency, apply his brakes, and there still be sufficient time and distance *508 for his vehicle to go completely off on the right westbound shoulder, cross the highway and strike the Coca Cola truck almost stopped on the right eastbound shoulder. Assuming, arguendo, Pizzolatto was 200 feet distant, the greatest distance alluded to in the contradictory and varying estimates given by plaintiffs' witnesses, it is highly improbable the accident could have occurred as contended by plaintiffs. As previously shown, the distance between Pizzolatto and Ladouceur was being reduced at the rate of 110 feet per second. A distance of 200 feet or even 220 feet would allow only a two second interval for Ladouceur to react to the careening oncoming vehicle, make normal application of his brakes and completely attain the right shoulder before being struck while in the same interval Pizzolatto, reacting to the alleged danger, makes an emergency application of his brakes, loses control of his vehicle which then goes completely off on the right shoulder, crosses the highway into the opposing lane and strikes the Coca Cola truck in the manner shown.
We conclude the only plausible explanation of the accident in question is the version given by Ladouceur and Archangel in their statements of March 31, 1960, wherein they unquestionably attribute the accident to the fact that Pizzolatto lost control of his vehicle. We further conclude that the attempted passing of the Coke truck by Dartez did not create an emergency as contended by plaintiffs as Pizzolatto was too distant from the point of impact at the time he drove into the passing lane to observe the approach of oncoming vehicles. It is abundantly clear the distance was such that Dartez had no difficulty whatsoever in timely regaining his proper lane and bringing his truck to an uneventful normal stop on its proper side of the highway.
It is of utmost significance to recall that Ladouceur received settlement of his claim against Belanger's insurer prior to testifying in this suit. The record shows that on August 12, 1960, (the present suit was filed August 4, 1960), Ladouceur received the sum of $3,417.12 in consideration of which he gave full compromise release to Pizzolatto, Mrs. Belanger and The Millers Mutual Fire Insurance Company of Texas, Belanger's liability insurer, for all claims against said parties arising out of the accident in question. Able counsel for appellees strenuously objected to introduction of the release on the ground evidence of compromise or offer of compromise is inadmissible. We readily agree with astute counsel for appellees that evidence of compromise or offer to compromise is generally inadmissible insofar as it may tend to establish liability. However, in the present case, we believe the release granted by Ladouceur in consideration of the settlement received to be of probative value in determining the veracity of his testimony at the trial. This is especially so in view of his obvious interest in the outcome of this present litigation and his prior statement of March 31, 1960, which is utterly conflicting and completely irreconcilable with the evidence he gave upon the witness stand. It is also shown Archangel received payment of an undisclosed sum from Millers.
Plaintiffs have cited several cases in support of their contention that Dartez was guilty of negligence constituting a proximate cause of the accident. Our careful consideration of each said authority reveals all are distinguishable upon their facts.
Martin v. Firemen's Insurance Co. of Newark, N. J., 241 La. 1047, 132 So.2d 892, involved a head-on collision in which an oncoming vehicle was struck by an overtaking vehicle while the latter was in the wrong lane of travel. Likewise in Hidalgo v. Dupuy, La.App., 122 So.2d 639, a truck pulled out into the wrong lane in order to overtake another truck and collided with an approaching automobile. In Embody v. LeBlanc, La.App., 131 So.2d 225, the party found negligent passed two large trucks while approaching a bridge in the face of an oncoming vehicle. After the quick braking action of the lead truck driver, the overtaking vehicle returned to its proper side of *509 the road on the bridge just prior to impact with the oncoming vehicle which went out of control in an effort to avoid a head-on collision.
Todd v. Kirspel, La.App., 41 So.2d 714, although quite similar to the case at bar, is, nevertheless, distinguishable in certain important aspects. The cited case involved a collision caused by the sudden emergency of a truck pulling out into the wrong lane of travel to afford the driver opportunity to observe approaching traffic prior to passing a vehicle ahead. The maneuver caused an oncoming motorist to go out of control resulting in a collision between the approaching and overtaking vehicles thus attesting to proximity of the vehicles when the overtaking vehicle pulled into the passing lane.
In the case at bar we believe the physical facts justify the conclusion Dartez's act of pulling into the passing lane to observe the approach of oncoming traffic, did not proximately cause the accident in question. It is quite obvious that the maneuver was attempted when Ladouceur was sufficiently distant from Pizzolatto as to afford ample time to observe the oncoming swerving Mercury automobile, slow his fully laden Coca Cola truck from 30 miles an hour to 5 miles an hour or a near stop and get completely off the traveled portion of the highway, all in a normal, smooth manner, while Dartez stopped without incident approximately 50 feet behind the Coca Cola truck. We do not believe, therefore, that Pizzolatto was confronted with an emergency created by Dartez.
Guidry v. Crowther, La.App., 96 So.2d 71, cited by plaintiff, is factually similar to the case at bar, but turned upon the credibility of the driver of the overtaking vehicle and those witnesses who corroborated his version of the accident. In the Guidry case, supra, the trial court found the overtaking driver and his witnesses deliberately fabricated their testimony regarding the ability of Hebert to pass Guidry without creating an emergency, said finding being based on their giving testimony at the trial contrary to prior statements regarding this important circumstance.
We are constrained to the conclusion the only drivers who had their vehicles under control were Ladouceur and appellant Dartez. We so conclude because Dartez brought his vehicle to a stop in a normal manner in its own proper lane of travel and Ladouceur steered his truck onto the right shoulder and brought it to a virtual halt without incident and without any emergency application of brakes.
It is our considered judgment the record does not disclose any sound basis on which the occurrence of the accident can be precisely reconstructed. It is our clear impression, however, that Pizzolatto lost control of his vehicle for some undisclosed reason not related to any action on the part of Dartez. The fact that the exact circumstances surrounding the occurrence of the accident cannot be determined from the record, including distances, speeds, time intervals and visibility, cannot be resolved against defendants. Nor are appellants required to establish why Pizzolatto lost control of his automobile and drove into the wrong lane of traffic. In each instance the onus is upon plaintiffs who have failed to discharge the burden incumbent upon them.
In the case at bar the testimony of plaintiffs' witnesses presents a highly improbable if not utterly impossible version of the accident. Additionally, plaintiffs' contentions are mainly unsupported by the physical facts and corroborated principally by testimony of witnesses whose evidence upon trial is completely contradictory to prior statements given at an unsuspicious time. Such testimony we believe insufficient to support a judgment for damages.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff, Mrs. Mary P. Belanger, and against defendants, Douglas Dartez, Clark Sherwood, Contractor, and Employers Mutual Liability Insurance Company of Wisconsin, in solido, in the sum of $14,153.30, be and the same is hereby annulled, *510 reversed and set aside and judgment rendered herein in favor of said defendants dismissing and rejecting plaintiff's demands at plaintiff's costs.
The conclusion herein reached obviates the necessity of our ruling upon the collateral issues raised herein by appellants.
Reversed and rendered.