ELLIS, Judge.
This case was filed by Mrs. Clotilde P. Mire, wife of Gustave Mire, seeking an award for personal injuries received in an automobile accident which occurred on February 3, 1963. At the time of the accident Mrs. Mire was a guest passenger in a 1961 Pontiac driven by her husband which collided with a 1957 Ford automobile driven by Mrs. Marie M. Amacker at a point about four miles west of the Mississippi River bridge on U. S. Highway 190 in West Baton Rouge Parish. The companion case of Birmingham Fire Insurance Company of Pennsylvania, et al. v. Amacker, 176 So.2d 629, was filed by the collision insurer of Mr. Mire’s vehicle in an effort to recover the amount paid on the damages to Mr. Mire’s Pontiac as a result of the accident. These suits were consolidated for trial and also consolidated on this appeal. After trial was had on the merits, the trial judge gave judgment dismissing both suits for oral reasons assigned. Opposing counsel agreed, on appeal, that in his oral reasons the trial judge found that the accident was proximately caused by the negligence of an unidentified third party whose car was not actually involved in the collision and who drove from the scene of the accident without being identified. Mrs. Clotilde P. Mire perfected a devolutive appeal from this adverse judgment.
Counsel for Mrs. Mire contends, on appeal, that the accident resulted from the combined negligence of Mrs. Amacker and Mr. Mire or, in the alternative, he submits that “said accident was due to the negligence of either Mr. Mire or in the further alternative to that of Mrs. Amacker.”
All parties agree that prior to the collision both cars involved were traveling east on Highway 190, it was between 4:30 and 5:00 P.M. on a Sunday afternoon and the traffic was fairly heavy in both directions. The weather was clear and dry. At the point of collision U. S. Highway 190 is a four lane thoroughfare divided in the middle by a neutral ground approximately four feet wide. It is undisputed that just prior to the accident Mrs. Amacker’s Ford was following an unidentified third car. The Amacker car was ahead of the Mire car but the exact positions of the unidentified car and the Amacker car before trouble developed is in question. It is undisputed *626 that the Amacker car skidded across the left lane after trouble arose. The Amacker car actually skidded to a stop across the two east-bound lanes pointing in a general northerly direction and was then struck on its left side by the front of the 1961 Pontiac driven by Mr. Gustave A. Mire. It is also undisputed that the Mire car and the Amacker car were both traveling at approximately 60 miles per hour in a 65 mile speed zone just prior to the collision. There is one main point of difference in the testimony of all the witnesses to the accident. This is the exact position of the three cars, the Mire car, the Amacker car and the unidentified car just prior to the accident.
Mr. Mire gave this version of the accident. He had driven into the left or passing lane of the east-bound traffic. He proceeded to pass five or six cars which were traveling ahead of him on the right. Pie made this maneuver at a rate of approximately 60 miles per hour. He then noticed another car ahead of him in the right-hand traffic lane. In an attempt to pass this vehicle he continued in the left lane and approached it. He states that suddenly and without warning this vehicle, which was the Amacker car, swerved directly into his path, almost totally blocking both lanes of traffic, and he had no choice but to slam on his brakes and skid directly into the left side of it.
Mrs. Mire stated that she was asleep at the time of the accident and there is nothing in the record to contradict this. Therefore, she gave no testimony concerning the actual circumstances concerning the accident. Any question of her negligence is pretermitted.
Mrs. Amacker gave a version of the facts which was quite different from that of Mr. Mire. She testified that just prior to the accident she was proceeding in an easterly direction on Plighway 190 in the left lane of traffic. An unidentified car was traveling in the right traffic lane. She was in the process of passing this car when it swerved suddenly, without warning, into her path. She had no choice but to slam on her brakes and swerve into the right lane in an attempt to avoid colliding with the unidentified car. In making this maneuver, she was heading in a southeasterly direction off the highway. Therefore, she turned her car sharply in an effort to avoid the dangers of completely losing control of the car. She skidded to a stop facing in a general northerly direction and was then struck by Mr. Mire’s car. The unidentified car continued its course in an easterly direction and was not seen again.
At this point it should be noted that all of the other eye witnesses, including Mr. Mire, testified that there was an unidentified third vehicle preceding Mrs. Amacker. Mr. Mire stated that he could see the top of this car over the Amacker vehicle just prior to the collision.
The guest passenger in the Amacker car was Mrs. Amacker’s niece, Rose Mary Fri-lot. She corroborated her aunt’s testimony in every respect.
Mr. Paul R. Giglio was in a fourth car following the Mire vehicle. He was able to bring his car to a stop without being involved in the collision. He was proceeding about 150 yards behind the Mire car at the time the accident occurred. He testified that there was a vehicle in front of Mrs. Amacker in the right lane of traffic a few seconds before the trouble developed. He did notice Mrs. Amacker’s brake light going on and Mrs. Amacker swerving into the right lane. He was unaware of the reason for this. It is interesting to note that Mrs. Amacker related the same account of the accident to the investigating officer, Trooper Arthur J. LeBlanc, at the scene of the accident.
As noted supra, counsel for appellant, Mrs. Clotilde P. Mire, urges that the combined negligence of Amacker and Mire caused the accident. It is submitted that Mire admitted his failure to pay proper attention :
“Q And what goes on in the right-hand lane does not concern you?
*627 “A Not too much, unless I’m traveling at a slow rate of speed.
“Q All right, sir. Now isn’t a fact that it was, the first time that you noticed the Amacker car was when it zigzagged?
“A I saw the car moving and it zigzagged and all at once it was before me. 'That’s all I can tell you.
“Q You didn’t notice it until it started zigzagging, isn’t that correct?
“A Yes, sir.
“Q And when it started zigzagging you still didn’t do anything?
“A I applied' — -I went to applying my brakes.
“Q No, sir, that’s not what you said on your deposition.
“A When she came across the street everything happened at the, immediately at the same moment; there was no time of saying she went over here. I don’t know what she did. When .1 noticed it moving it came across my path and I applied my brakes immediately.”
Appellant’s counsel also notes in connection with his contention that Mire was negligent, the salient fact appearing from the testimony of all other witnesses. This is that Mire was mistaken in testifying that the Amacker vehicle was in the right lane of traffic just before trouble developed. This failure to note the correct situation was cited as proof that Mire was not keeping a proper lookout. Another aspect of Mire’s negligence urged, on appeal, by counsel for Mrs. Mire was that Mire was following too closely to the Amacker car to bring his car to a stop in case of an emergency. He cited the cases of Martin v. Sanders, La.App., 163 So.2d 923; Kottwitz v. Highway Insurance Underwriters, La.App., 92 So.2d 79; McDaniel v. Capitol Transport Co., Inc., 35 So.2d 38, in support of this contention. It is contended that Mire could have avoided the accident by pulling into the right lane of traffic. It is also urged that Mire did see the unidentified car somewhere ahead of the Amacker car and that, therefore, he should have been more careful in approaching both cars.
Counsel for appellant makes the following observation concerning Mrs. Amacker’o negligence:
“We also submit that application of the foregoing authorities to this case convicts Mrs. Amacker of gross negligence in causing this accident. Her testimony is to the effect that the unidentified vehicle merely swerved in her path. She readily admitted that this car did not stop and did not decrease its speed. In truth, we think the actions of the unidentified vehicle, if in fact they did occur as she states, caused her to panic. Had she not panicked, we respectfully submit that she would have merely decelerated her speed and permitted this unidentified vehicle to continue on its way without contributing to the collision.
“It will further be observed from the testimony of the disinterested witness, Giglio, who stated positively that he had observed this unidentified vehicle traveling ahead of him in the outside traffic lane, that he saw the brake light of the Amacker vehicle come on for no apparent reason. Prior to the appearance of the brake light of the Amacker vehicle, Giglio did not observe any swerving on the part of the unidentified vehicle. If, in fact, such swerving did actually occur prior to the actions of Mrs. Amacker, we believe it would have been observed by Mr. Giglio.
“While the distance between the Amacker vehicle and the unidentified vehicle was fixed by the witness Mrs. Rose Mary Frilot, a passenger in the *628 Amacker vehicle, at some one or two car lengths, we believe this distance to be erroneous. Had the cars been that close, and had this unidentified vehicle swerved in the path of Mrs. Amacker, we find it difficult to believe that Rose Mary Frilot was only slightly excited. (See transcript testimony, Pages 15S and 156.)”
Although Mrs. Amacker’s actions as a consequence of the emergency created by the unidentified driver were possibly not the most prudent, she is not held to a high degree of care in such a circumstance. The Sudden Emergency Doctrine has been consistently recognized in Louisiana as will be noted from the following excerpt from the case of Jones v. Continental Casualty Co. of Chicago, Illinois, 246 La. 921, 169 So.2d 50:
“Under the facts of the instant accident, we find that Hailey’s error of judgment was in cutting to his left. His testimony affirmatively discloses that his intention was to avoid an accident, which was and he thought was imminent; he hoped that his maneuver would assure his negotiation of the impending traffic peril. For our determination is the question of whether Hailey can be absolved from negligence under the facts of the emergency in which he committed an error of judgment.
“ ‘The law does not require a choice unerring in the light of after events; it requires such a choice as, under all the known or obvious circumstances, a reasonably prudent man might make. A person is by no means held to the same judgment and activity under all circumstances. The opportunity to think and act must be taken into consideration in determining whether due care was exercised in making a choice between methods or courses of conduct. As hereinafter appears, the fact that one acts in the stress of an emergency or sudden peril not due to his own act or omission justifies conduct that would otherwise be regarded as negligent. 38 Am.Juris., sec. 193, verbo “Negligence”.
“ ‘The circumstances under which a person is required to choose between methods are material in determining whether he was negligent in his choice. Usually the safest course to take when one is handling a vehicle in traffic is to stop when danger presents itself, but there is no requirement of law which will render one negligent if he fails to stop, where, in a sudden emergency, another course of conduct is consistent with ordinary prudence. The law does not expect one to exercise the same degree of judgment in an emergency wherein his personal safety is threatened, as in a situation where he is not subject to the fear of sudden disaster. The law recognizes the fact that a prudent man, when brought face to face with an unexpected danger, may fail to use the best judgment, may omit some precaution he might have taken, and may not choose the best available method of meeting the dangers of the situation. It does not charge him with contributory negligence for the fact alone that he makes a mistake in the method adopted to escape a peril which exists not through his fault, but through the negligence of another. 38 Am.Juris., sec. 194, verbo “Negligence”.’ Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127. See, Thibodeaux v. Gore, La.App., 124 So. 2d 336; Breaux v. Valin, La.App., 138 So.2d 405; Higginbotham v. Frazier, La.App., 92 So.2d 89; Commercial Standard Insurance Company v. Johnson, 228 La. 273, 82 So.2d 8. Cf. Martin v. Firemen’s Insurance Co. of Newark, N. J., 241 La. 1047, 132 So.2d 892.”
The same relaxed rule applies to Mire’s actions upon being confronted with the emergency. The Amacker car, sudden *629 ly and without warning, swerved to the south and then north and came to a very sudden stop. It all but completely blocked both lanes of traffic. Mire slammed on brakes and slid into the side of the Amacker car. There was little else he could have done. Oncoming traffic was heavy in the west-bound lanes. It might also be noted that he had a perfect right to proceed in the left lane of traffic on the four lane highway and that the stopping maneuver made by Mrs. Amacker was certainly not the ordinary slamming on of brakes. It is also significant that the highway upon which the vehicles involved in the accident were traveling was a four lane thoroughfare with a 65 mile per hour speed limit Such a highway is generally safer to drive on than a two lane highway, as there is little possibility of meeting oncoming cars.
As for the negligence of the driver of the unidentified vehicle, the following citations made by counsel for Birmingham Fire Insurance Company of Pennsylvania in his appellate brief are concise and to the point:
“LSA-R.S. 32:104 A provides: ‘No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.’ The jurisprudence is also settled that a motorist desiring to change lanes on a multiple lane highway has the burden to ascertain that such a change can be made safely without interference with overtaking traffic. Blanchard v. Hardware Mutual Casualty Company, 153 So.2d 517 (1st Cir., La.App.1963); Barber v. Thompson-Hayward Chemical Company, 152 So.2d 649 (2nd Cir.La.App.1963). Thus the law is clear that it is negligence to change lanes without determining it is safe to do so.”
The cases cited by counsel for appellant, supra, are all distinguishable upon the facts presented from the case at bar. There is no point in belaboring the distinctions, however.
Taking all of the testimony and evidence in the record into consideration, it is felt that plaintiff has failed to prove her case by a preponderance of the evidence. It is found that the trial judge was justified in concluding that the proximate cause of the accident was the negligent creation of an emergency by the driver of the unidentified car when he drove his car, suddenly and without warning, into the passing lane very close to and directly in the path of the advancing Amacker car.
Accordingly, the judgment of the Trial Court is affirmed at Plaintiff’s cost.
Affirmed.