ELLIS, Judge.
This case arises out of an automobile-accident which occurred on January 27,. 1963, at about 1:30 A.M., in or near the town of Cut-Off in Lafourche Parish. The-accident was a head on collision between a 1953 Chevrolet automobile, owned and driven by Ecton A. Curóle, Jr., and a 1963-Chevrolet owned by Bill Garret Leasing Inc., and driven by Paul W. Davidson. Luke R. Chabert, who was a guest passenger in the Curóle car, was killed in the accident.
The suit was brought by Paul W. Davidson and his insurance company, New Hampshire Insurance Company, against Ecton A.. Curóle, Jr., and Lumbermen’s Mutual Casualty Company, his insurer. The case was. *313 tried on September 21st and 22nd, 1964, and on March 15th and 16th, 1965.
Judgment was rendered herein in favor ■of Curóle and Lumbermen’s, and against Davidson and New Hampshire, dismissing their suit at their cost.
Davidson and New Hampshire appealed ■devolutively from the judgment herein.
The only eye witness to the accident was Paul W. Davidson, who was driving the southbound car. His testimony was to the ■effect that he was operating his vehicle in a southerly direction at a speed of about forty miles per hour when he noticed a vehicle approaching him between a quarter of a mile and a half mile away. The car veered over into his lane. I-Ie stated that he took his foot off of the accelerator and rested it on the brake at that time. The lights then went back into their proper lane, and the approaching vehicle continued to drive normally until it was about a hundred and fifty feet from Davidson. At that point, according to Mr. Davidson, he saw the lights of the vehicle veer over into his lane. He stated that, in an effort to avoid a collision with the automobile, he applied his brakes and swerved his vehicle to the left. The collision occurred in about the center of the northbound lane of traffic.
Ecton Curóle, Jr., who was operating the northbound vehicle, stated that the last thing he recalled before the accident was when he was about three blocks away from the point of impact, and that he remembered nothing of the circumstances of the collision. After the collision, the two vehicles remained approximately at the point of impact, forming a shallow “V” in the roadway, with the rear end of both vehicles protruding across the center line of the road into the other lane. The Davidson vehicle, according to the testimony of the trooper, left approximately thirty-nine feet of skid marks. No skid marks were noted for the Curóle vehicle. The damage to the Curóle vehicle was all the way across the front end. The damage to the Davidson vehicle was to the right front end of the vehicle. The only other- evidence of import which was presented to the trial Court was the testimony of Dr. Gilbert E. Caillouet, who was among the first to arrive at the accident and who treated both Curóle and Davidson. Dr. Caillouet stated that Curóle was highly intoxicated when he examined him just after the accident.
The trial Judge found that the testimony of Davidson was contradicted by the physical evidence in the case. He was of the opinion that the damage to the two automobiles showed conclusively that the Curóle vehicle had to be straight in its lane at the time of impact, and that the Davidson vehicle was angled across the road. It is this finding of fact which is attacked by appellants Davidson and New Hampshire. Appellants contend that the physical evidence in every way confirms the testimony of Mr. Davidson.
The law is clear that one whose vehicle is in the wrong lane of traffic at the time of a collision bears the burden of proving that the collision was not caused by his negligence, or that there were justifiable circumstances which would excuse his conduct. Jones v. Continental Casualty Company, 246 La. 921, 169 So.2d 50 (1964). The burden is, therefore, on Davidson to prove that he was not negligent in being in Curole’s lane of traffic. In attempting to do this, the defendants claim the benefit of the sudden emergency, another well established rule in this state. It is stated in Thibodeaux v. Gore, 124 So.2d 336 (La.App.1960) :
“The jurisprudence of this State has been established to the effect that when the driver of a motor vehicle is confronted with a sudden emergency, not of his own making and to which he did not contribute, he will not be held responsible for errors of judgment committed by him in that emergency, provided he exercises ordinary, prudent and reasonable care under the circumstances. Snodgrass v. Centanni, 1956, 229 La. 915, 87 So.2d 127; *314 Commercial Standard Insurance Company v. Johnson, 1955, 228 La. 273, 82 So.2d 8; Bourgeois v. Fidelity and Casualty Company of New York, La.App.1958, 102 So.2d 532; Wiley v. Sutphin, La.App.1959, 108 So.2d 256.”
See also Jones v. Continental Casualty Company, supra.
The other testimony in the case and the photographs following the evidence indicate that the point of impact between the two vehicles was approximately in the center of the northbound or east lane of traffic. It is also evident that the center of the Curóle vehicle struck the right front of the Davidson vehicle, and that at the moment of impact, the longitudinal center lines of the two cars were at an angle to each other. The record also makes it clear that the Davidson vehicle left thirty-nine feet of skid marks leading up to the point of impact, and that there were no skid marks left by the Curóle vehicle. It is equally clear from the testimony that when the two vehicles came to rest at the point of impact, they lay at approximately the same angle to the center line of the highway with the rear ends of each car protruding over into the other lane of traffic.
The trial Judge concluded from the damage to the front ends of the vehicle that the Curóle automobile must have been straight in its lane of traffic at the time of impact. Although the damage to the vehicles indicates their relative position at the time of impact, one or the other of them would have to have its position fixed at 'the time of impact in order for the Judge to reach that conclusion.
In addition, the positions of the vehicles themselves after the accident, and the fact of the skid marks, if anything, tend to confirm Mr. Davidson’s testimony. The fact of Curole’s drunkenness, which we find to be adequately proven, certainly would corroborate the testimony of the erratic behavior of his automobile. Mr. Davidson’s testimony, on the whole, seems to be straightforward and to be supported,, rather than refuted by, the physical evidence. We find that he has satisfactorily-borne the burden of proof in explaining his-presence in the wrong lane of traffic, and' that he is entitled to the benefit of the sudden emergency doctrine. We find that the sole proximate cause of the accident was-the negligence of Ecton Curóle, Jr., in driving his vehicle into the opposite lane of traffic and thereby creating the sudden emergency.
We now turn to the question of quantum. At the time of the accident, Mr. Davidson was 31 years of age. He was employed by the California Company as a helicopter pilot, and was a part time salesman for Pan American Life Insurance Company. He held an unrestricted pilot’s license for both fixed wing and rotary wing aircraft, and had just passed a first class unrestricted physical examination for the Federal Aviation Authority.
In the accident, Mr. Davidson suffered contusions and lacerations on the forehead and chin, contusion of the chest and left knee, and abrasion of the right leg and a comminuted fracture of the left tibia at the knee. He was treated at Our Lady of the Sea Hospital by Dr. Gilbert E. Caillouet immediately after the accident, and was referred to Dr. Thomas L. Duncan of Ochs-ner Clinic in New Orleans, whom he saw on January 31, 1963. Dr. Duncan’s findings were substantially 'the same as those of Dr. Caillouet, with the addition of complaints of muscle soreness of the top of the right shoulder. Dr. Duncan placed the left leg in a cast from the ankle to the upper thigh and sent him home. He was treated at home by Dr. Roy G. Folse, and also continued to see Dr. Duncan. The cast was removed on March 21, 1963, a leg brace was fitted and hot soaks and light knee exercise was prescribed. He was relieved of the brace on May 21, 1963. By October 8, 1963, when he was last seen by Dr. Duncan, he was still having some difficulty with the knee, but the doctor felt it would not be *315 a. problem for him, and that there would be no residual disability.
In addition, Dr. Duncan described a ■palsy or paralysis of a nerve controlling certain muscles in his back, which, in turn, ■interfered with the use of the arm, particularly when working with the arm overhead -or in pushing or pulling strongly. When Dr. Duncan last saw Mr. Davidson, in October, 1963, the condition was still present. He was unable to say if it was permanent, but did say that if it were going to clear up, it would do so in 18 to 24 months. He attributed the condition to the accident.
Dr. Duncan was of the opinion that Mr. Davidson was able to return to his occupation as a helicopter pilot as of June 17, 1966, in spite of the condition of his leg and arm. 'Dr. Folse, on the other hand, was of the ■opinion that he would no longer be able to perform the duties of a helicopter pilot because of his shoulder condition.
As of the date of the trial, in March, 1965, Mr. Davidson testified that his shoulder -condition had not improved at all, and that he was still unable to use his right arm normally. He testified further that he occasionally felt soreness and tiredness in his knee after having a hard day’s work, tie further testified that he had attempted to ;get work as a pilot with Mobil Oil Company, Eastern Airlines and Delta Airlines, but that he was unable to do so despite the fact that he had sufficient experience, flying time and ratings. Prior to the accident, he had been flying commercially for a period of ten years. It is obvious from the record that his failure to obtain such employment results from the injuries suffered in the accident.
We believe that the clear preponderance of the evidence is to the effect that Mr. Davidson was permanently and totally disabled to carry on his occupation as a commercial pilot.
Before the accident, Mr. Davidson was earning $900.00 per month as a pilot, and had averaged almost that much as a life insurance salesman. He was totally incapacitated for a period of five months, and has never been able to gain employment as a pilot since his recovery. However, since that time, he has worked full time as a life insurance salesman.
We think it clear that he is entitled to the sum of $7500.00 for loss of income from all sources during his five months incapacitation. In addition, it is apparent that he lost income while unable to work as a pilot and during the period he was attempting to establish himself as a full time salesman.
From the time of his return to work in June, 1963, until the time of the trial, Mr. Davidson had no income as a pilot, and his income from selling life insurance was never greater than it was prior to the accident. We think it clear that he will never be able to work as a commercial pilot again, and thus will be deprived of this source of income for life. At the time of the accident, Mr. Davidson was 31 years of age, and under the American Experience Mortality Table has a life expectancy of 34.63 years. We believe it would be reasonable to expect that a person of Mr. Davidson’s obvious ability will in future years offset some of this loss by increased income as a full time life insurance salesman.
There is no formula which can be applied to work out the full extent of Mr. Davidson’s damages in this respect, but considering the record as a whole, we are of the opinion that the sum of $40,000.00 will adequately compensate him.
In addition, we will award the sum of $5000.00 for pain and suffering and permanent disability, and the sum of $1350.57 as special damages, which we find to have been adequately proven. The amount of damages suffered by New Hampshire Insurance Company as collision insurer of Davidson’s vehicle was stipulated to be $1973.00.
*316 The record reveals that Lumbermen s stipulated coverage for Mr. Curóle, but specifically did not place its policy in evidence. We can only conclude that the coverage afforded thereby is adequate to cover any award made herein.
Accordingly, the judgment of the District Court is reversed, and there will be judgment herein in favor of Paul W. Davidson and against defendants Ecton A. Curóle, Jr., and Lumbermen’s Mutual Casualty Company in the full sum of $53,850.57, together with legal interest from date of demand until paid, and all cost of these proceedings.
There will be further judgment in favor of New Hampshire Insurance Company and against Ecton A. Curóle, Jr., and Lumbermen’s Mutual Casualty Company in the sum of $1973.00 with legal interest from date of demand until paid, and all costs.
Reversed and rendered.