SWIFT, Judge.
This action arose from a car-truck collision which occurred at about 2:55 A.M. on April 14, 1966, on U. S. Highway 51 approximately two miles south of the Pass Manchac Bridge. At this point the highway runs generally north and south. Involved in the accident were a 1965 Volkswagen which was driven in a northerly direction by the plaintiffs’ son, Kenneth W. Nelson, and a 1965 White Freighter tractor-trailer unit that was driven towards the south by Charles J. Rowland in the course of his employment with defendant, Hirschbach Motor Line.
The truck was owned by Hirschbach and insured by Hartford Accident and Indemnity Company, the other defendant. When empty it weighed some 28,000 pounds, and at the time of the collision it was carrying approximately 35,000 pounds of meat. The width of the unit at its widest point was about eight feet. It was equipped with air brakes.
According to the log of the truck’s itinerary, Donald M. Thomason, co-driver with Rowland, drove the truck from Jackson, Mississippi to Hammond, Louisiana, during the hours from 11:00 P.M. to 2:00 A.M. preceding the accident. Rowland slept in the compartment provided for that purpose, while Thomason handled the driving duties. Following a brief fifteen minute stop at Hammond, Rowland took his turn of duty at the wheel and headed for New Orleans. From this point on Thomason was in the process of going to sleep in the sleeping compartment.
Kenneth Nelson, a 20 year old student at Southeastern Louisiana College in Hammond, died in the collision. Therefore, the only surviving eye witness was the truck driver, Charles Rowland.
The action was tried and submitted to a jury for a special verdict. The jury found both Rowland and Nelson guilty of negligence, but that only Rowland’s negligence was a proximate cause of the accident. It also concluded that Rowland had the last clear chance to avoid the accident. Damages were assessed at $20,000.00 for each parent, with an additional $2,000.00 for Mr. Nelson for funeral expenses. Upon the signing of a judgment in accordance with the verdict, defendants filed motions for a new trial and a remittitur. Both motions were denied and defendants have taken this appeal.
Charles Rowland testified he had operated large trucks for about thirteen years before this accident. Just before the collision he was travelling about 50 miles per hour and first noticed the headlights of the Volkswagen when the vehicles were about 500 or 600 feet apart. At this time the Volkswagen was partially in the south bound lane in which his truck was travel-ling. He estimated the speed of the approaching vehicle at about 30 or 35, or possibly 50 miles per hour, but added that he really did not know how fast it was going.
In order to alert the driver of the automobile to his improper position, Rowland raised and lowered the truck’s headlights and removed his foot from the accelerator to reduce its speed. Apparently responding to the warning signal, the other driver returned his vehicle to its proper lane of travel. Rowland said he then resumed his former speed.
When the vehicles were about 300 feet apart- the Volkswagen again entered the south bound lane. Rowland reacted by taking his foot off the accelerator and moving the truck slightly to the right in the south bound lane. He did not remem *440 ber whether he applied the brakes at this moment. The Volkswagen continued across the highway and on the shoulder of the south bound lane. Rowland guessed the vehicles were about 100 feet apart at the time.
The truck driver was unable to state with exactness just what occurred from this point on, but thought probably he had applied the brakes and pulled to his left in an effort to avoid the approaching vehicle. He did recall, however, that the automobile veered from the west shoulder of the highway into the path of the truck, striking the latter’s right front corner with its left front. The force of the impact tilted the tractor-trailer unit, causing it to fall on the left or driver’s side and slide, along with the entrapped automobile, for approximately 180 feet.
The testimony of Troopers Aubert and Lemay, the investigating officers, and the photographs taken of the scene and vehicles confirm Mr. Rowland’s account of the accident in most respects.
Trooper Allen J. Aubert expressed the opinion, on the basis of the truck’s tire prints and the fallen debris, that at the moment of impact, which he located about in the middle of the highway, the truck was travelling in a sohtheasterly direction. He further testified that the above mentioned physical evidence, the damages to the respective vehicles and the final resting place of the automobile on the west shoulder of the road indicated the automobile was travelling in the wrong lane and the truck was trying to avoid it at the moment of the collision. The trooper acknowledged, however, that he had also taken into account what the truck driver told him in reaching this conclusion.
The testimony of. the other investigating officer, William Lemay, was somewhat inconclusive as to the location of the point of impact. On direct examination he placed this in the middle of the north bound lane, but on cross examination he located the point of impact closer to the center than to the east shoulder of the highway. Nevertheless, Trooper Lemay, like Trooper Au-bert, concluded after investigation that the accident had occurred as related by the driver of the truck.
The photographs of the highway and tire marks thereon show clearly that the truck was in its proper lane when the brakes were applied, and that it then veered to its left, just before the impact. The photographs of the tractor-trailer leave no doubt that the initial impact was to its right front corner.
The jury undoubtedly accepted Mr. Rowland’s testimony that the driver of the Volkswagen was on the wrong side of the highway immediately before the accident. Otherwise, there would be no basis for its finding that Kenneth Nelson was negligent. We concur with the special verdict in this respect. However, we are convinced the findings that Nelson’s negligence was not a proximate cause of the accident, that Charles Rowland was guilty of negligence which proximately caused same and that Rowland had the last clear chance to avoid the collision are manifestly in error.
Although subject to many and varied definitions, proximate cause has been defined briefly by our Supreme Court in Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), as follows:
“Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Under the circumstances of this case, the negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence of the driver of the R C Cola truck, then his negligence was not a substantial factor or cause-in-fact. * * *” (137 So.2d 302).
*441 Undoubtedly, the operation of the Volkswagen on the wrong side of the highway was a substantial factor in bringing about this accident, and it would not have occurred had the automobile remained in its proper lane. It is therefore clear that such negligence on the part of its driver was a proximate cause of the accident.
The doctrine of last clear chance, generally stated, allows recovery for injuries sustained, notwithstanding plaintiff’s negligence in exposing himself to the danger from which the injury arose, if the defendant, after becoming aware of the peril in time to avoid the injury, failed to exercise ordinary care to do so. 65A C.J.S. Negligence § 136(1). For the doctrine to be applicable, these three essential elements must be established: (1) the person relying thereon was in a position of danger of which he was unaware or from which he was unable to extricate himself; (2) the person against whom the doctrine is invoked actually discovered or should have discovered the other person’s peril; and (3) at such time the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care. Meynier & Dillman Hardware Co. v. Aronson, 229 So.2d 365 (La.App. 4 Cir. 1970). Of course, there can be no recovery under this doctrine from a defendant who exercised due care in discovering the plaintiff’s peril, and after discovering it could not have avoided the accident. Litton v. Samuel, 98 So.2d 534 (La.App. 2 Cir. 1957). Also, a defendant who discovers the plight of another is exonerated from liability even though the actions taken to prevent the accident fail if his actions are those of a normally prudent and reasonable person. The defendant in such situation is not held to a standard of unerring judgment when confronted with an emergency created through negligence of another. Jones v. Continental Casualty Company of Chicago, Illinois, 246 La. 921, 169 So.2d 50 (1964); Gage v. Nesser, 119 So.2d 98 (La.App. 1 Cir. 1960); Guidry v. United States Casualty Co., 134 So.2d 319 (La.App. 3 Cir. 1961).
The preponderance of evidence in the record establishes that Charles Rowland acted with reasonable care and made every effort to avoid the collision. Therefore, the doctrine of last clear chance has no application in this instance.
When Rowland first saw the Nelson vehicle in the improper south bound lane, Nelson responded to the warning signal by returning his vehicle to the north bound lane. Certainly, at this point Rowland had no reason to be aware of any incapacity on the part of the other driver or that he was, or soon would be, in a perilous position. In light of the prior conduct of the decedent Rowland may have been entitled to believe the automobile would be returned to its proper lane at the moment it entered the south bound lane for the second time. But if not, we are firmly convinced it was then too late for him to have avoided the accident through the exercise of any reasonable means and that his actions in face of the sudden emergency created by the automobile driver were prudent.
The rapidity with which these events occurred is illustrated by the following testimony of co-driver Thomason:
“Q. What is the first thing you knew of any kind in the world something extra ordinary or out of the ordinary was about to happen?
“A. Well, I was about half asleep, I imagine caught about half way, I heard Mr. Rowland exclaim ‘My God, that man’s asleep!’ And the next thing I knew we was on the side.”
Counsel for plaintiffs contend that Rowland’s own testimony reveals he had sufficient time to avoid the accident after discovering young Nelson’s predicament. He points to the truck driver’s estimate of “about one minute” between the time he first noticed the car on his side of the road and the impact. As we have already pointed out, there was no reason for Mr. Rowland to be aware of the decedent’s being in *442 a perilous situation when he crossed the center line the first time. However, we note that when asked by counsel for an estimate of such time period he first said, “Not very long — minutes, seconds, half a minute.” And as to the elapsed time between the second crossing of the center line and the impact his answer was, “Ten seconds maybe, I don’t know.” Aside from the fact that estimates of time, speed and distance are at best mere educated guesses and often are unreliable no matter how honestly made, it must be remembered that these time estimates were reached on the witness stand in the courtroom, and concern events and periods which took place more than two years before. It is obvious from these and his other answers that Rowland was doing his best to give rough estimates in order to answer counsel’s questions.
Mr. Rowland also estimated that the car was about 300 feet from him when it entered his lane for the second time and that it was travelling from 30 to SO miles per hour. His testimony that the truck was going about 50 miles per hour at this time was not merely an estimate as its speedometer was before him. The rate of closure between the two vehicles under such circumstances would not be less than 117 feet per second, thus affording the truck driver less than three seconds to avoid the accident after the car crossed the road the second time.
We are convinced from the record as a whole that it was only a matter of seconds between the time Mr. Rowland was, or should have been, aware of the decedent’s peril and the impact. That he could have stopped or maneuvered this 30 ton vehicle, which was proceeding lawfully on the highway at SO miles per hour, in such time and have avoided the accident is beyond comprehension. On the contrary, the actions taken by the driver were most reasonable and prudent.
Plaintiffs’ contention that we should reject Charles Rowland’s testimony in toto under the doctrine of “falsus in uno, falsus in omnibus”, because of the inconsistency between his estimates of time intervals and distances involved, is without merit. His estimate of “about one minute” elapsing between the Volkswagen’s first being in the wrong lane and the impact was in error. However, it is clear from the record that the witness did not intentionally testify falsely in this respect. As heretofore pointed out, this was a rough guess made by Mr. Rowland when it is apparent that he was trying his best to answer a difficult question asked by counsel. It is apparent from the record that he was a forthright and credible witness, and there is no indication the jury considered him otherwise.
For the foregoing reasons, the judgment of the district court is reversed and set aside and judgment is hereby rendered in favor of defendants, Hirschbach Motor Line and Hartford Accident and Indemnity Company, and against plaintiffs, Dorothy Costen Nelson and Wesley W. Nelson, rejecting their demands and dismissing this suit at their costs. Plaintiffs are also assessed with the costs of this appeal.
Reversed and rendered.