HOOD, Judge.
Mrs. Sandra S. Free seeks to recover damages for personal injuries sustained by her when the automobile in which she was riding as a guest passenger ran off the road and crashed into a tree. The defendant is Liberty Mutual Insurance Company, the insurer of the driver of the car. Defendant specially pleaded contributory negligence or assumption of the risk by plaintiff. The trial judge found that plaintiff had assumed the risk of injury, and he rendered judgment in favor of defendant. Plaintiff appealed. We affirm.
The principal issue presented, and we think the determining one, is whether plaintiff assumed the risk of injury by voluntarily riding in an automobile with a driver who she knew, or should have known, was intoxicated.
The accident occurred about 2:45 a. m., on February 4, 1978, in the City of Shreveport. Mrs. Free was riding as a guest passenger in the right front seat of an automobile owned and being operated by defendant’s insured, Ralph Elliott, Jr. The only other passenger in the car was Chris D. Shouse, who was asleep in the rear seat. The automobile ran off the side of the road and crashed into a tree. Plaintiff sustained severe injuries as the result of that accident.
*CDXCII Elliott, who was 20 years old, lived in a mobile home with his friend, Shouse, who was either 18 or 19 years of age. These young men had dates for the evening of Friday, February 3. Elliott purchased a fifth of gin, and from that bottle he fixed a drink for himself and one for Shouse immediately before they left to pick up their dates. They first picked up plaintiff, Mrs. Free, who was Elliott’s date, about 7:30 or 8:00 p. m., and then they picked up Shouse’s date, Lisa Rinaudo. The two couples then went to a restaurant where the four of them shared two pizzas, and Shouse drank a bottle of beer.
The parties then went to the Shreveport Convention Center at about 9:30 p. m., and attended a high school dance there, although none of them were students in that high school. Plaintiff, Mrs. Free, smuggled the fifth of gin into the building, and during the high school dance she went to the ladies’ room from time to time and mixed drinks for Elliott and Shouse. Miss Rinau-do did not consume any of the gin, and Mrs. Free consumed only a minute quantity of it by sipping occasionally from the drinks of her companion. Except for the small amount sipped by Mrs. Free, the entire bottle of gin was consumed by Elliott and Shouse between 9:30 and 11:00 p. m., while they were attending the high school dance.
The two couples left the convention center at about 11:00 p. m., and rode in Elliott’s car to the Starting Gate Disco Lounge, in Bossier City, where they remained until the lounge closed at 2:00 a. m. While there, they danced and Elliott and Shouse each consumed two or three more alcoholic drinks, all in thejpresence of plaintiff and Miss Rinaudo. When the lounge closed,\they again got into the car and Elliott drove them to the home of Miss Rinaudo. Shouse escorted her to the door, and when he returned to the car he got into the back seat and immediately went to sleep. Plaintiff continued to occupy the right front seat of the car, but she also went to sleep immediately after they left the Rinaudo home. Elliott testified that he began to feel drowsy after he dropped Miss Rinaudo off, that he knew that both of his other passengers had gone to sleep in the car, and that he also went to sleep while he was attempting to drive Mrs. Free home. He was asleep when the car ran off the road and struck the tree, and Elliott concedes that the accident occurred because he went to sleep.
At the time of the accident, Mrs. Free was 21 years of age. She was separated from her husband and had a three-year-old child. She had been dating Elliott about once a week for a few weeks, and she stated that on each such occasion they went dancing, went to the same disco lounge, and consumed about the same amount of intoxicants. She regarded Elliott as a careful driver, and she stated that she “always got aggravated because he wouldn’t go — you know, sometimes he wouldn’t go the speed limit.” She stated that she has no recollection of anything that happened after they left the convention center at 11:00 o’clock (we gather from the evidence that her loss of memory is one of the results of the injuries she sustained), but that she did not notice anything wrong with the way he drove prior to that time. Miss Rinaudo was 16 years of age at the time of the accident, and she also felt that Elliott drove carefully that evening.
Chris Shouse, the other passenger in the car, upon being asked how much the group drank that evening, testified:
“Oh, it was about enough to get us pretty drunk, you know. We were pretty drunk. I couldn’t tell you. You know, we had been to the Starting Gate and everything. I couldn’t say exactly how much.”
Elliott admits that after the accident occurred a charge was filed against him of driving while intoxicated, and that he entered a plea of guilty to that charge.
At 3:55 a. m., or a little more than one hour after the accident, a blood sample was taken from Elliott at the Willis-Knighton Hospital, and an analysis disclosed that his blood contained 0.13 per cent alcohol at the time that sample was taken.
Dr. Helmud Redetski, a pharmacologist and a physician, testified at the trial. He is *CDXCIII licensed to practice medicine in Texas and Louisiana, he is head of the Department of Pharmacology and Therapeutics at the LSU School of Medicine in Shreveport, and he has done extensive research on the effects of alcohol and the intoxicating effect which alcohol has on people. He was accepted by the trial court, without objection, as an expert on the effect of alcohol on human beings. Based on assumed facts which we find to be supported by the evidence, Dr. Redetski calculated that at the time of the accident Elliott would have had a .1475 or .15 per cent blood alcohol level. He arrived at that conclusion after considering Elliott’s weight, the assumption that he ate at about 8:00 p. m. on February 3, that he consumed his last drink about 2:00 a. m. on February 4, and that the accident occurred about one hour before the blood sample was taken at 3:55 a. m., all of which assumptions are most favorable to defendant’s case. The doctor testified that in his opinion Elliott had consumed 13 or 14 drinks of 80-proof gin between 7:00 or 8:00 p. m. on February 3, and 2:00 a. m. on February 4.
The trial judge analyzed Dr. Redetski’s opinion as follows:
Dr. Redetski testified that most people are affected in their gait, speech and actions after the blood alcohol level reaches .1; that at .15, 95 percent of the drinkers will have recognizable motor impairment. In other words, 95 percent of the people who have blood alcohol level at .15 would show the impairment and these effects should be observable to the ordinary person. He stated as to the other five percent that they may be able to conceal the effect to some extent, but they are the people who have been drinking alcohol in an excessive amount over a lengthy period of time, which he stated to be one or two years. He further stated that impairment of driving skills has been shown in every test where a .15 blood alcohol level was present. It was his opinion that an ordinary person would be able to tell that a driver who had such a blood alcohol level could not operate his vehicle safely. Finally, Dr. Redetski stated that it is very common for a person with .13 blood alcohol level to fall asleep while driving.
Dr. Redetski indicated, as we understand his testimony, that the terms “pass out” and “go to sleep” are sometimes used indiscriminately in describing the condition of an intoxicated person who loses consciousness.
We agree with the trial judge in his analysis of the testimony of Dr. Redetski.
The applicable law was stated by our Supreme Court in Prestenbach v. Sentry-Insurance Co., 340 So.2d 1331 (La.1977) as follows:
The law is well settled that a guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver’s negligence, if the alcohol-induced impairment of the driver’s ability is a substantial contributory cause of the driver’s negligence and if the guest passenger knows or should have known of the driver’s condition and nevertheless voluntarily rides with him. Marcotte v. Travelers Ins. Co., 258 La. 989, 249 So.2d 105 (1971); Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50 (1964).
As with other affirmative defenses, the defendant who pleads contributory negligence or assumption of the risk bears the burden of proving it. La.C.Civ.P. art. 1005; McInnis v. Firemen’s Fund Insurance Company, 322 So.2d 155 (La.1975); Marcotte v. Travelers Ins. Co., cited above. In the present case, this means that, to defeat recovery for damages caused by the driver’s undoubted negligence, the defendant must prove by a preponderance of the evidence that: (1) the driver was intoxicated; (2) his intoxication was a cause of the accident; and (3) the plaintiffs’ decedent knew or should have known of the driver’s condition. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Marcotte v. Travelers Ins. Co., supra; Jordan v. Trav *CDXCIV elers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
The evidence establishes, and both parties apparently agree, that the driver, Elliott, was intoxicated at the time of the accident, and that his intoxication was the cause of that accident. Applying the rules set out in Prestenbach, therefore, the only issue remaining is whether plaintiff, Mrs. Free, knew or should have known of Elliott’s condition and nevertheless voluntarily rode with him in the automobile. The burden of proof rests on defendant to establish by a preponderance of the evidence that Mrs. Free knew or should have known that Elliott was intoxicated when she voluntarily rode with him.
Knowledge of the risk will be imputed to the plaintiff if the evidence shows that she actually made observations as to the driver’s condition, and from those observations reasonably should have known that a risk was involved. McInnis v. Firemen’s Fund Insurance Co., supra; Prestenbach v. Sentry Insurance Co., supra; Evans v. Travelers, 351 So.2d 783 (La.App. 1st Cir. 1977).
The evidence convinces us, as it did the trial judge, that Mrs. Free knew, or should have known, of Elliott’s intoxicated condition when she elected to ride with him as they left the convention center at 11:00 p. m. on February 3, when they left the disco lounge at about 2:00 a. m. on February 4, and when they left Miss Rinaudo’s home about 2:30 a. m. Although she does not recall what occurred after they left the convention center, we attribute her loss of memory to the injuries which she received as a result of the accident. Since she had had very little, if anything, to drink that evening, and since there is nothing in the record to indicate otherwise, we conclude that she was aware, or should have been aware, of the quantity of alcohol which Elliott consumed while she was with him, and that she thus should have known that he was intoxicated.
Mrs. Free poured drinks for Elliott and Shouse that evening and she had actual knowledge of the fact that the two of them consumed practically all of a fifth of gin, most of which was consumed between 9:30 and 11:00 p. m. on February 3. Although she has no recollection now of what happened after 11:00 p. m., we believe that she knew, or should have known, that Elliott had had two or three more drinks at the Starting Gate Disco Lounge when she voluntarily got into his car again at 2:00 a. m. on February 4 to allow him to drive her home. She had been with him almost constantly during that period of about six hours.
Considering the testimony of Dr. Redet-ski and the amount of alcohol which Elliott consumed at the convention center and at the disco lounge, we must conclude that Mrs. Free either detected, or should have detected, that Elliott was intoxicated each time she rode with him after they left the convention center. She voluntarily got into the car with him twice after they left that center, and then when they took Miss Ri-naudo home she voluntarily stayed in the car and allowed him to drive her to the point where the accident occurred.
We find no merit to the argument that plaintiff had no reason to suspect that Elliott was intoxicated, despite the amount of alcohol which she knew he had consumed, because of the fact that he did not appear to be drowsy, that he had not told his passengers that he was sleepy, that he had not allowed his vehicle to wander on or off the highway and had not lost control of it, that he did not drive at a high rate of speed or in a reckless manner, and that he had not disregarded traffic signals. In view of the amount of alcohol which he had consumed, with plaintiff’s knowledge, we think Mrs. Free either knew, or should have known, that there was a distinct danger that he would “go to sleep” or “pass out” while driving the car, that an accident likely could occur, and that she might sustain injuries as result of that accident.
We find no error in the conclusion reached by the trial court that plaintiff assumed the risk of injury, and that she thus is barred from recovery.
*CDXCV The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
PRICE, J., dissents and assigns written reasons.